# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| MOV-OLOGY LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>BIGCOMMERCE HOLDINGS, INC., BIGCOMMERCE PTY. LTD., and BIGCOMMERCE, INC.,<br><br>*Defendants*. | Case No. 6:22-cv-00084-ADA<br><br>PATENT CASE<br><br>JURY TRIAL DEMANDED |

### DEFENDANTS' OPPOSED MOTION FOR TRANSFER VENUE
### TO THE NORTHERN DISTRICT OF CALIFORNIA

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND ................................................................................................................. 1

    A. The Parties ............................................................................................................... 1

    B. The Asserted Patents ............................................................................................... 4

    C. The Accused Products ............................................................................................ 5

III. LEGAL STANDARD .......................................................................................................... 5

IV. ARGUMENT ....................................................................................................................... 6

    A. This Case Could Have Been Brought in the NDCA ............................................... 6

    B. The NDCA is Clearly More Convenient Than the Waco Division of WDTX ....... 6

        1. The Ease of Access to Sources of Proof Favors Transfer .......................... 8

        2. The Cost of Attendance of Willing Witnesses Favors Transfer ................ 9

        3. The Absence of Other Practical Problems Favors Transfer ..................... 10

        4. The Local Interests Strongly Favor Transfer ........................................... 11

    C. All Other Factors are Neutral, None Weigh Against Transfer ............................. 11

V. CONCLUSION .................................................................................................................. 12

**TABLE OF AUTHORITIES**

**Cases**                                                                                                                           **Page(s)**

*In re Apple Inc.*,
  No. 2021-187, 2021 WL 4485016 (Fed. Cir. Oct. 1, 2021) ................................................................ 10

*BillJCo, LLC v. Apple Inc.*,
  No. 6:21-cv-00528-ADA, 2022 U.S. Dist. LEXIS 35391 (W.D. Tex. Mar. 1, 2022) ........................... 9

*Decapolis Systems, LLC v. eClinicalWorks, LLC*,
  No. 21-CV-00502-ADA, ECF No. 30 (W.D. Tex. Mar. 1, 2022) (transferring case to District of Massachusetts despite Defendant's presence in the Austin Division.) ................................................... 8

*Freshub, Inc. v. Amazon.com Inc. et al.*,
  No. 1:19-cv- 00885-ADA, Dkt. 29 (W.D. Tex. Sept. 9, 2019) ............................................................ 10

*Hammond Dev. Int'l, Inc. v. Amazon.com, Inc.*,
  No. 6:19-cv-00355-ADA, 2020 WL 6136783 (W.D. Tex. Mar. 30, 2020) ......................................... 10

*In re Hoffmann-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) ............................................................................................................ 11

*MicroPairing Techs. LLC v. Toyota Motor Mfg. Texas, Inc.*,
  No. 6-20-CV-01001-ADA, 2021 WL 4526704 (W.D. Tex. Oct. 1, 2021*)* ............................................ 8

*Mimedx Group, Inc. v. Texas Human Biologics, Ltd.*,
  No. 14-CV-464, 2014 WL 12479284 (W.D. Tex. Aug. 12, 2014) ........................................... 7, 10, 11

*In re Nintendo Co. Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009) .............................................................................................................. 8

*In re Pandora*,
  No. 2021-172, 2021 WL 4772805 (Fed. Cir. Oct. 13, 2021) ............................................................ 9, 10

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) ........................................................................................................ *passim*

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ............................................................................................................. 5, 6

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................................................ 1, 6, 11

**Other Authorities**

Fed. R. Civ. P. 16 .................................................................................................................................... 10

**I.      INTRODUCTION**

Defendants BigCommerce Holdings, Inc., BigCommerce Pty. Ltd., and BigCommerce, Inc., (collectively "Defendants") respectfully move to transfer this case from the Waco Division of the Western District of Texas ("WDTX") to the Northern District of California ("NDCA") because the latter is clearly the more convenient venue for this dispute under 28 U.S.C. § 1404(a).

MOV-ology's decision to file this case in the Waco Division of the WDTX is purely strategic, and calculated to call Defendants into an unfamiliar forum. Neither party has any connection to the Waco Division of WDTX and MOV-ology has no Texas presence at all. Both parties, however, have a presence in California. Plaintiff MOV-ology's only office is Anaheim, California, which is situated in the nearby Central District of California ("CDCA"). Similarly, the majority of Defendants' software development and technical leadership personnel are based in the NDCA in San Francisco. As set forth in the sworn Declaration of Jeff Mengoli (BigCommerce, Inc.'s General Counsel) the NDCA bears not only a deep and direct connection to the relevant facts, but is also the only jurisdiction where: (1) nearly all of the likely witnesses are located; and (2) any relevant documents are located and maintained. The NDCA is thus clearly the more convenient venue for both parties.[1]

**II.     BACKGROUND**

    **A.      The Parties**

MOV-ology is a limited liability company organized and existing under the laws of

---

[1] To the extent MOV-ology responds in Opposition that NDCA is not clearly more convenient than WDTX because of Defendants' presence in the Austin Division of the WDTX, it would be improper for MOV-ology to impute the convenience of a Division it chose not to file in to the Waco Division for the purposes of the venue analysis. *See, e.g., In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013) (applying the venue analysis from the perspective of the Division, not the District as a whole). Nevertheless, Defendants reserve the right to argue in the alternative for intra-district transfer to the Austin Division.

Delaware with an office in Anaheim, California. (Dkt. 1 "Compl." at ¶ 7.) Anaheim is located in Orange County, which falls within the Southern Division of the CDCA. The majority of Defendants' senior technical and business development executives are located in its San Francisco, CA office. Declaration of Jeff Mengoli ("Mengoli Decl.") at ¶¶ 9-12. Maps of the CDCA and NDCA are reproduced below.[2]



Defendants' San Francisco office is located less than two miles from the San Francisco Federal Courthouse where the NDCA is seated.[3]

---

[2] *See* https://www.cacd.uscourts.gov/jurisdiction (CDCA on left) and https://www.cand.uscourts.gov/about/jurisdiction-map/ (NCDA on right).

[3] Google Maps direction between Defendants' San Francisco office and the San Francisco Federal Courthouse, available at https://goo.gl/maps/6zM6B5P4jfquExwJ7.



MOV-ology's complaint alleges no facts suggesting any connection to the state of Texas, the Western District of Texas, or specifically to the Waco Division. (*See generally,* Compl.). Defendants likewise have no connection to the WDTX's Waco Division. Mengoli Decl. at ¶¶ 3-4.

Defendant BigCommerce Holdings, Inc. is a Delaware corporation and Defendant BigCommerce, Inc. is a Texas corporations. *Id.* at ¶¶ 5-6. They have offices in the NDCA at 685 Market St floor 3, San Francisco, CA 94105 and in the Austin Division of the WDTX in Austin, Texas. *Id.*[4] Defendant BigCommerce Pty. Ltd. is an Australian proprietary limited company with no U.S. presence. *Id.* at ¶ 7. Both BigCommerce, Inc. and BigCommerce Pty. Ltd. are subsidiaries of BigCommerce Holdings, Inc. *Id.* at ¶ 8.

Defendants' senior technical executives who are most familiar with Defendants' products and services work primarily in the San Francisco office. *Id.* at ¶¶ 9-12. Defendants' corporate and

---

[4] A BigCommerce subsidiary not named in the present litigation also maintains a U.S. office in Woodland Hills, CA. Mengoli Decl. at ¶ 5.

finance leadership is located in its Austin office. *Id*. at ¶ 13. Defendants' San Francisco office provides ready access to all documentary records relevant to the design, development, and manufacturing of all of BigCommerce's software products and services. *Id*. at ¶ 14. No such employees or records are located or maintained in the Waco Division. *Id*. at ¶ 4.

Defendants anticipate that several of their employees are likely to be witnesses at trial in this case, including employees who work at their San Francisco facilities. *Id*. at ¶¶ 9-12. None of Defendants' likely witnesses are based in Waco. *Id*. at ¶ 4.

### B. The Asserted Patents

MOV-ology asserts U.S. Patent Nos. 9,286,282 (the "'282 patent") and 10,769,358 (the "'358 patent") (collectively, the "Asserted Patents") against Defendants. As summarized in the table below, the Asserted Patents are part of the same patent family and generally relate to systems and methods for obtaining data from abandoned or incomplete electronic forms.

|  | '282 Patent | '358 Patent |
|---|---|---|
| **Title** | Obtaining Data from Abandoned Electronic Forms | Obtaining Data from Incomplete Electronic Forms |
| **Inventors** | Thomas Ling and Peter Norton | Thomas Ling and Peter Norton |
| **Filing Date** | June 18, 2014 | July 9, 2018 |
| **Priority Date** | November 25, 2013 | November 25, 2013 |
| **Asserted Claims** | 1, 9 | 1, 9, 17 |
| **Example Claim** | 9. An apparatus to obtain data from abandoned electronic forms, the apparatus comprising:<br><br>computer hardware configured to determine that an electronic form accessed by a user has been abandoned by the user, the electronic form having embedded computer-executable instructions and one or more fields configured to accept user-entered text, the electronic form comprising at least one hypertext markup language (HTML) element associated with the one or more fields, the at least one HTML element having at least one attribute;<br><br>computer hardware configured to obtain data from the abandoned | 17. A method to obtain data from incomplete electronic forms, the method comprising:<br><br>assessing an incomplete electronic form comprising at least one hypertext markup language (HTML) element and user-entered text entered by a user;<br><br>obtaining a protocol of at least one webpage associated with the incomplete electronic form;<br><br>writing a script tag associated with a script file to the at least one webpage according to the protocol, the script tag configured to place the script file onto the at least one webpage, the script file configured to locate the at least one HTML element;<br><br>building a data structure based on the incomplete electronic form that comprises at least the user-entered text; |

4

| | | |
|---|---|---|
| | electronic form with the embedded computer-executable instructions by building a data structure based on the abandoned electronic form and parse the data structure to obtain the at least one HTML element; and<br><br>computer hardware configured to store one or more of the at least one HTML element, the at least one attribute, and the user-entered text. | communicating with one or more databases to obtain additional information about the user based at least in part on the user-entered text obtained from the incomplete electronic form;<br><br>storing contact profile information that comprises a least a portion of the user-entered text obtained from the incomplete electronic form and at least a portion of the additional information about the user obtained from the one or more databases; and<br><br>sending to the user, a personalized message based at least in part on the at least one HTML element and the contact profile information. |

### C. The Accused Products

As detailed in Defendants' contemporaneously-filed Motion to Dismiss for Failure to State of Claim, MOV-ology does not identify an infringing product or service. Rather, MOV-ology's complaint cites to an informational webpage on Defendants' website entitled "What are Form Analytics" generally describing form analytics. MOV-ology alleges that, based on the informational website, Defendants develop software that infringes, though it does not identify an actual product or service.

### III. LEGAL STANDARD

In determining whether transfer is appropriate, the Court must first consider "whether a civil action 'might have been brought' in the destination venue." *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (quoting § 1404(a) (hereinafter "*Volkswagen II*"). If the answer to this threshold question is yes, then the Court must then weigh a number of private and public interest factors to determine the relative convenience of each venue:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*Id.* at 315. Where the analysis of the relevant factors shows the transferee forum to be "clearly more convenient" than the plaintiff's original choice, the court must order transfer. *Id*. The Fifth Circuit confirmed that the same analysis holds for intra-district transfers. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) ("The § 1404(a) factors apply as much to transfers between divisions of the same district as to transfers from one district to another.").

IV.  **ARGUMENT**

The Waco Division of WDTX is not the home forum for either party, or where any witnesses or documents are likely to be found. Indeed, the Waco Division has no connection to either party, the technology at issue, or the relevant personnel. As such, the Court should transfer this case to the NDCA because: (1) MOV-ology could have originally filed this case in the NDCA; and (2) the NDCA is clearly more convenient than the Waco Division of WDTX.

A.  **This Case Could Have Been Brought in the NDCA**

The first step in assessing whether to transfer pursuant to Section 1404(a) is to consider whether this case could have been brought in the transferee forum. *See* 28 U.S.C. § 1404(a). MOV-ology's complaint confirms that this case could have been filed in either the NDCA. It alleges, for example, that Defendants maintain an office "in San Francisco." (Compl. at ¶ 17.) Thus, this case "might have been brought" in the NDCA. Conversely, MOV-ology's complaint alleges no facts specifically supporting venue in the Waco Division. (*See generally,* Compl.). Rather, MOV-ology's Complaint acknowledges that Defendants' only presence in the WDTX is found in the Austin Division. (Compl. at ¶¶ 8, 10.)

B.  **The NDCA is Clearly More Convenient Than the Waco Division of WDTX**

The second part of the Section 1404(a) calculus is to assess eight "private" and "public" factors to determine whether they weigh clearly in favor of transfer. *Volkswagen II*, 545 F.3d 312. Analyzing the Fifth Circuit's enumerated factors (adopted for intra-district transfers in *Radmax*)

6

demonstrates that litigating this case in the NDCA would be clearly more convenient than litigating in the Waco Division of WDTX. As summarized in the following chart, each of these factors weighs clearly in favor of transfer to the NDCA or is neutral, and therefore Defendants' motion to transfer should be granted.

| Factor | More Convenient Venue |
|---|---|
| Relative ease of access to sources of proof | NDCA |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| Cost of attendance for willing witnesses | NDCA |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | NDCA |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest in having localized interest decided at home | NDCA |
| Familiarity of the forum with the law that will govern the case | Neutral |
| Avoidance of unnecessary problems of conflict of laws or in the application of foreign law | Neutral |

Accordingly, transfer is warranted: four factors favor transfer, four factors are neutral, and *no* factors support litigating in the Waco Division. *See Radmax*, 720 F.3d at 290 (confirming that it was an "extraordinary error" to decline transfer where three factors supported transfer, five were neutral, and "not a single relevant factor favors the plaintiffs' chosen venue" (brackets omitted) (quoting *Volkswagen II*, 545 F.3d at 318)); *Mimedx Group, Inc. v. Texas Human Biologics, Ltd.*, No. 14-CV-464, 2014 WL 12479284 at *3 (W.D. Tex. Aug. 12, 2014) (ordering transfer where

7

four factors favored transfer, four were neutral, and none favored plaintiff's choice of venue); *Decapolis Systems, LLC v. eClinicalWorks, LLC*, No. 21-CV-00502-ADA, ECF No. 30 (W.D. Tex. Mar. 1, 2022) (transferring case to District of Massachusetts despite Defendant's presence in the Austin Division.).

### 1. The Ease of Access to Sources of Proof Favors Transfer

Evidence in a patent infringement case typically comes from the accused infringer. *See In re Nintendo Co. Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009) (applying 5th Circuit law). As this Court has observed "[t]he presence of physical facilities does indeed suggest that it is easier to access documents" where those physical facilities are located. *MicroPairing Techs. LLC v. Toyota Motor Mfg. Texas, Inc.,* No. 6-20-CV-01001-ADA, 2021 WL 4526704, at *3 (W.D. Tex. Oct. 1, 2021*) (granting Intel's intra-district motion to transfer from the Waco Division to the Austin Division in part because Intel had a campus in Austin). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original).

Defendants have no relevant operations, personnel, or documents in the Waco Division; their only U.S. corporate offices are in San Francisco and Austin. Mengoli Decl. at ¶¶ 4-12. All hard copy and electronic documents in Defendants' possession that are likely to relate to MOV-ology's claims are maintained in the ordinary course of business at Defendants' San Francisco office. *Id.* at ¶ 14. As this Court has recognized, where a party has a presence in a transferee division and no presence in the division where the complaint was brought, this factor weighs in favor of transfer. *Micropairing*, 2021 WL 4526704, at *2 (citing *VLSI Tech. LLC v. Intel Corp.,* 2019 WL 8013949, at *3 (W.D. Tex. 2019) (granting transfer where "Intel has a campus in Austin, but not in Waco, [making] it [ ] easier to access Intel's electronic documents from Austin than from Waco")).

MOV-ology, in contrast, identifies no sources of its own evidence in the Waco Division or anywhere in Texas as its only presence is in the CDCA. Accordingly, whatever relevant evidence possessed by MOV-ology is relatively more convenient in the NDCA than anywhere in the WDTX due to the CDCA's proximity to the NDCA. *See BillJCo, LLC v. Apple Inc.*, No. 6:21-cv-00528-ADA, 2022 U.S. Dist. LEXIS 35391, at *32 (W.D. Tex. Mar. 1, 2022) (finding that ease of access factor is informed by the relative proximity of the parties to the transferee venue). Thus, NDCA is clearly more convenient as to both parties and weighs in favor of transfer.

### 2. The Cost of Attendance of Willing Witnesses Favors Transfer

The cost of attendance for the willing witnesses factor also weighs in favor of transfer. This factor appropriately considers the cost of attendance of ***all*** willing witnesses including party and non-party. *In re Pandora*, No. 2021-172, 2021 WL 4772805, at *2-3 (Fed. Cir. Oct. 13, 2021). As an initial matter, Defendants have no presence in the Waco Division. Mengoli Decl. at ¶ 4. MOV-ology also has no presence in Waco. (*See generally,* Compl.). In contrast, Defendants' witnesses are located in San Francisco. Mengoli Decl. at ¶¶ 9-12. Defendants also anticipate they will have at least one witness located outside of Texas – Troy Cox, SVP, based out of Sydney, Australia. *Id.* at 10. For the BigCommerce witnesses located in San Francisco and Sydney, Australia, travel to Waco—thousands of miles away from San Francisco and over 100 miles from Austin—will be burdensome and inconvenient, as it will add travel time, force them to be away from work and families, and impose additional expense. These burdens are unnecessary when these witnesses are readily available in San Francisco and Defendants' San Francisco office is in close proximity to the NDCA.

For those witnesses who are not based in San Francisco, traveling to San Francisco is clearly more convenient and less costly than traveling to Waco. For example, Defendants' witnesses from outside San Francisco can fly directly to San Francisco, but would have to connect

to Waco or drive there from another city such as Dallas. The same is true for MOV-ology witnesses from California, who would have to make an additional stop to travel to Waco.[5] *In re Apple Inc.*, No. 2021-187, 2021 WL 4485016, at *2 (Fed. Cir. Oct. 1, 2021) (referencing the lack of direct flights from California to Waco); *see also Mimedx*, 2014 WL 12479284, at *2 (finding that the eighty-mile driving distance between Austin and San Antonio weighed in favor of transfer).

In addition, Defendants' San Francisco facilities will afford all Defendants' witnesses, regardless of their residency, the opportunity to work if and when they need to travel to San Francisco. *See Hammond Dev. Int'l, Inc. v. Amazon.com, Inc.*, No. 6:19-cv-00355-ADA, 2020 WL 6136783, at *4 (W.D. Tex. Mar. 30, 2020) (finding the convenience of witnesses weighed in favor of transfer to Austin, where the defendant had offices in Austin, and out of town witnesses "can work in the Austin offices"). This greatly minimizes the inconvenience of being away from home.

Here, because the travel times to Waco are greater for all potential witnesses this factor weighs heavily in favor of transfer to San Francisco. *See Freshub, Inc. v. Amazon.com Inc. et al.*, No. 1:19-cv- 00885-ADA, Dkt. 29 at 3 (W.D. Tex. Sept. 9, 2019); *Mimedx*, 2014 WL 12479284, at *2.

### 3. The Absence of Other Practical Problems Favors Transfer

The fourth factor considers practical problems, speed, and expense. This case is still in its earliest stages: Defendants' Answer is not due until the end of March, and the Court has not yet held a Rule 16 Conference. Thus, there is no reason to expect that transferring the case to NDCA would result in any meaningful delay that would counsel against doing so. *See Radmax*, 720 F.3d

---

[5] As the Federal Circuit has noted, "[t]here is no major airport in the Waco Division of the Western District of Texas." In re *Pandora*, No. 2021-172, 2021 WL 4772805, at *6. Therefore, Austin would also be more convenient for those witnesses flying to trial from outside of Texas.

at 289 ("[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer."); *Mimedx*, 2014 WL 12479284, at *2.

Moreover, there are no other cases where the Asserted Patents have been filed. In other words, transfer does not split MOV-ology's efforts to try its case for the alleged infringement of the Asserted Patents. Consequently, this factor also favors transfer.

### 4. The Local Interests Strongly Favor Transfer

Finally, a division has greater local interest in adjudicating an action when the accused infringer is located within that division. *Datascape*, 2019 WL 4254069, at *5; *Mimedx*, 2014 WL 12479284 at *3. The NDCA has a considerable interest in deciding this case, which affects its corporate residents. Defendants have chosen not to locate in the Waco Division, but rather in San Francisco and in the Austin Division. Because at least some of the accused infringers are based in San Francisco, the residents of the NDCA will have a significant local interest in the outcome of this case. And, the local interest of the NDCA is far more significant than the Waco Division of the WDTX. *See Mimedx*, 2014 WL 12479284, at *3 (confirming in patent case that "Defendants and their employees are local to the San Antonio area. The ultimate outcome of this suit likely affects local San Antonio interests more acutely than local Austin interests."); *see also In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009) ("[I]f there are significant connections between a particular venue and the events that gave rise to a suit, [the local interest] factor should be weighed in that venue's favor."). The Waco Division does not have a local interest that is apparent from the Complaint or the litigation in this case to date. Thus, local interest strongly favors transfer.

### C. All Other Factors are Neutral, None Weigh Against Transfer

The remaining factors are neutral and do not weigh for or against transfer. The compulsory subpoena power for unwilling third-party witnesses is the same for both the NDCA and the Waco

11

Division of WDTX. Both are familiar with and equally capable of applying federal patent laws. Neither would present a conflict of law or require the application of foreign law. And to Defendants' knowledge, there are no administrative difficulties flowing from court congestion.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully requests that the Court transfer this case to the NDCA because it is clearly more convenient than the Waco Division of WDTX.

Dated: March 31, 2022                           FISH & RICHARDSON P.C.

                                                By: *Michael R. Ellis*
                                                    Neil J. McNabnay
                                                    njm@fr.com
                                                    Texas Bar No. 24002583
                                                    Lance Wyatt
                                                    wyatt@fr.com
                                                    Texas Bar No. 24093397
                                                    Michael R. Ellis
                                                    ellis@fr.com
                                                    Texas Bar No. 24102726
                                                    FISH & RICHARDSON
                                                    1717 Main Street, Suite 5000
                                                    Dallas, TX 75201
                                                    (214) 747-5070 (Telephone)
                                                    (214) 747-2091 (Facsimile)

                                                *Attorneys for Defendants*
                                                *BigCommerce Holdings, Inc.,*
                                                *BigCommerce Pty. Ltd., and*
                                                *BigCommerce, Inc.*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(g), counsel for the parties have conferred and plaintiff is opposed to this motion.

>/s/ Michael R. Ellis
>Michael R. Ellis

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 31, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

>/s/ Michael R. Ellis
>Michael R. Ellis