**PUBLIC VERSION**

████████████

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

WACO DIVISION

| | |
|---|---|
| MOV-ology LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>BigCommerce Holdings, Inc.,<br>BigCommerce Pty. Ltd., and<br>BigCommerce, Inc.<br><br>                    Defendants. | Civil Action No. 6:22-cv-00084-ADA<br><br><br>**Jury Trial Demanded** |

**MOV-ology's Opposition to Defendants' Motion to Transfer Venue**

**to the Northern District of California (ECF No. 23)**

**Table of Contents**

Table of Authorities ........................................................................................................ ii

1.  Introduction ............................................................................................................. 1

2.  MOV-ology Could Not Have Sued BigCommerce Holdings, Inc. in N.D. Cal. ..................... 1

3.  BigCommerce Applies the Wrong Legal Standard and Conceals Key Transfer Facts .......... 3

4.  The Public and Private Factors Do Not Show N.D. Cal. as Clearly More Convenient ......... 5

4.1.  "Ease of Access to Sources of Proof" Weighs against Transfer ........................................ 6

4.2.  "Cost of Attendance for Willing Witnesses" Weighs against Transfer ............................. 9

4.3.  "All Other Practical Problems" Weighs against Transfer ................................................. 13

4.4.  "Court Congestion" Weighs against Transfer ................................................................... 14

4.5.  "Local Interests" Weigh against Transfer ......................................................................... 14

5.  Conclusion ............................................................................................................. 15

## Table of Authorities

### Cases

*Asetek Danmark A/S v. Shenzhen Apaltek Co., Ltd.*,
   No. W-21-CV-00501-ADA, 2022 U.S. Dist. LEXIS 82249 (W.D. Tex. May 6, 2022)....... 6, 16

*BillJCo, LLC v. Apple Inc.*,
   No. 6:21-cv-00528-ADA, 2022 U.S. Dist. LEXIS 35391 (W.D. Tex. Mar. 1, 2022) ............... 8

*Fintiv Inc. v. Apple Inc.*,
   No. 6:18-cv-00372, 2019 U.S. Dist. LEXIS 171102 (W.D. Tex. Sept. 10, 2019)..................... 7

*Hoffman v. Blaski*,
   363 U.S. 335 (1960) ..................................................................................................... 1

*In re Cray Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017)..................................................................................... 2

*In re Fine Paper Antitrust Litigation*,
   685 F.2d 810 (3d Cir. 1982).......................................................................................... 1

*In re Hoffman-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009)..................................................................................... 15

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013)......................................................................................... 4

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004)......................................................................................... 6

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008)......................................................................................... 1

*Kahn v. General Motors Corp.*,
   889 F.2d 1078 (Fed. Cir. 1989)..................................................................................... 14

*Magnacoustics Inc. v. Resonance Tech Co.*,
   No. 97-1247, 1997 U.S. App. LEXIS 26498 (Fed. Cir. Sept. 25, 1997) ..................................... 1

*Monterey Rsch, LLC v. Broadcom Corp.*,
   No. W-21-CV-00541-ADA, 2022 U.S. Dist. LEXIS 30364 (W.D. Tex. Feb. 21, 2022)......... 14

*MV3 Partners LLC v. Roku, Inc.*,
   No. 6:18-cv-00308-ADA, 2019 U.S. Dist. LEXIS 234328 (W.D. Tex. June 25, 2019) .... 10, 13

*Scramoge Tech. Ltd. v. Samsung Elecs. Co. Ltd.*,
   No. 6:21-cv-00454-ADA, U.S. Dist. LEXIS 92262 (W.D. Tex. May 16, 2022) ..................... 14

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   137 S. Ct. 1514 (2017) ................................................................................................... 2

*VLSI Tech. LLC v. Intel Corp.*,
   No. 1:19-cv-00977-ADA, 2020 U.S. Dist. LEXIS 248378 (W.D. Tex. Dec. 31, 2020) .......... 13

**Statutes**

28 U.S.C. § 1400.................................................................................................................... 2

28 U.S.C. § 1404.................................................................................................................... 1

1.      **Introduction**

BigCommerce seeks transfer of this case away from this District, where it maintains its

world headquarters, ███████████████████████████████████████████

███████ to the Northern District of California. BigCommerce makes this request based on the

presence in San Francisco of a single █████████████████████████████████

some of whom BigCommerce conveniently identifies as "likely" trial witnesses. BigCommerce

does this while accusing ***MOV-ology*** of making a tactical choice to file in this District, and

despite failing to meet the threshold requirements for transfer, and even applying the wrong legal

analysis. The case should not be transferred to the Northern District of California or anywhere.

2.      **MOV-ology Could Not Have Sued BigCommerce Holdings, Inc. in N.D. Cal.**

BigCommerce fails its threshold, mandatory burden to prove venue would be proper for

each defendant in the Northern District of California. This dooms the motion as a matter of law.

A case can be transferred only "to any other district or division where it might have been

brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

When a plaintiff opposes transfer, as here, a court will only weigh the public and private interest

factors ***after*** the movant has met its burden to prove "a civil action 'might have been brought' in

the destination venue." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). In an

action with multiple defendants, "venue and jurisdiction requirements must be met as to ***each***

***defendant***." *E.g.*, *Magnacoustics Inc. v. Resonance Tech Co.*, No. 97-1247, 1997 U.S. App.

LEXIS 26498, at *3-4 (Fed. Cir. Sept. 25, 1997) (emphasis added); *accord In re Fine Paper*

*Antitrust Litigation*, 685 F.2d 810, 819 (3d Cir. 1982) ("*Hoffman* thus precludes transfer over a

plaintiff's objections to a district in which venue would be improper as to a defendant who

remained a party to the action." (citing *Hoffman v. Blaski*, 363 U.S. 335, 342-43 (1960))).

BigCommerce's motion offers no documentary or testimonial evidence to support its claim that "this case could have been filed in either *[sic]* the NDCA." Mot. at 6. Instead, BigCommerce cites only MOV-ology's complaint, which states broadly based on BigCommerce's website that BigCommerce is a conglomerate with an office in San Francisco. *See id.* But non-public venue discovery obtained from BigCommerce revealed MOV-ology could not have sued BigCommerce Holdings, Inc. in the Northern District of California because it neither resides in nor has a regular and established place of business in all of California, let alone in the Northern District. *See* 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.").

First, no domestic defendant "resides" in California. "[A] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1517 (2017). BigCommerce Holdings, Inc. is a Delaware corporation, while BigCommerce, Inc. is a Texas corporation. Mot. at 3. The domestic defendants thus reside in Delaware and Texas, respectively. They can only face suit in another district if each maintains a regular and established place of business there.

Second, BigCommerce Holdings, Inc. ***does not*** maintain a regular and established place of business in the Northern District of California. A "regular and established place of business" requires proof of at least three facts: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). The lack of any one of these three elements means venue is improper. *See id.* Here, ███████████████████████████
████████████████████████████████████████████████████████

Of the two domestic defendants, only BigCommerce, Inc. has registered to do business in California. *See* Ex. A. Importantly, both BigCommerce, Inc. and BigCommerce Holdings, Inc. have registered to do business in Texas, and both list an address in this District as their principal place of business. *See* Ex. B at 1-2. That BigCommerce Holdings, Inc. has no California business registration tracks evidence unearthed in venue discovery: ████████████████████

███████████████████████████████████████████████

BigCommerce's Chief Legal Officer and venue declarant, Jeff Mengoli, testified that

███████████████████████████████████████████████████

████████████████████████████████ *See* Ex. C (Mengoli Dep.) at 19:12-14, 20:1-15, 21:7-22, 23:3-22, 24:17 to 25:10, 25:21 to 28:23; *see also* Ex. D at 2-6, Ex. E at 1-2, Ex. F at 1-2, Ex. G at 1-2, Ex. H at 1-2, Ex. I at 1-2. ██████████████████

███████████████████████████████████████████████

As BigCommerce Holdings, Inc. does not reside in California and has no regular and established place of business there, this ends the transfer for convenience inquiry and merits denying Defendants' motion, regardless of the public and private interest factors.

**3.     BigCommerce Applies the Wrong Legal Standard and Conceals Key Transfer Facts**

The framing of BigCommerce's motion would give an earnest reader an incorrect and misleading impression of both the law governing inter-district transfers and the facts about BigCommerce's relative presence in the transferee and transferor districts. Even the heading to its argument reads "[t]he NDCA is clearly more convenient than the Waco Division of WDTX." Mot. at 6. This compares apples to oranges and misstates the correct legal and factual standard.

BigCommerce's motion repeatedly cites cases resolving motions for ***intra***-district transfer, which logically compare one division within a district to another division in that same

district. BigCommerce then incorrectly suggests this Court should compare only one division of this District to the Northern District of California. This framing would work better—and indeed be correct—if BigCommerce sought intra-district transfer. In fact, BigCommerce at first met and conferred under Local Rule CV-7(g) by notifying MOV-ology it would seek intra-district transfer to the Austin division.[1] Assuming it conferred in good faith, BigCommerce had examined the factors under § 1404(a) and decided they favored the Western District of Texas. But this is not the relief now sought—BigCommerce now seeks transfer to San Francisco. While BigCommerce made sure to scrub its motion of facts revealing the overwhelming extent of its presence in this District, it still relied on inapposite caselaw and an incorrect legal standard.

BigCommerce cites no decision on *inter*-district transfer in which a court looked only at the current *division* against the transferee *district*. Even *In re Radmax, Ltd.*—which BigCommerce cites to excuse its omission of key facts about its presence in this District and to ask the Court to focus only on the Waco division—involved an *intra*-district transfer request between the Tyler and Marshall divisions of the Eastern District of Texas. *See* 720 F.3d 285 (5th Cir. 2013), *cited in* Mot. at 1, n.1. In motions for *inter*-district transfer, the appropriate analysis balances the facts in the current *district* against those of the would-be transferee *district*.

With this clarified, BigCommerce's motion paints a strikingly underinclusive picture of its connection to this District. ███████████████████████████████████████ ███████████████████████████████████████████████████████ *See* Ex. J at 2; *see also* Ex. C at 29:16 to 31:5. While Mr. Mengoli's declaration lists two San Francisco office addresses, venue discovery confirmed that ██████████████████████████████████

---

[1] These bait-and-switch tactics matter. Any claim that N.D. Cal. is more convenient than this District should be viewed by the Court with a jaundiced eye. Either BigCommerce noticed an intra-district motion in bad faith, or believed this District is a more convenient venue for trial.



██████████████████████████

██████████ *Compare* Mot., Mengoli Decl. ¶ 6, *with* Ex. J at 2, *and* Ex. C at 31:6 to 32:19.

At the beginning of this month, BigCommerce had 32 open job postings spanning all roles at the company for its Austin offices and zero for San Francisco. *See* Ex. K at 1-2; *see also* Ex. C at 33:11 to 36:19. ████████████████████████████████

████████████████████ *See* Ex. C at 40:25 to 43:5; *see also* Ex. L at 2-15, 19-20.[2] Of its San Francisco employees, ████████████████████████████ *See* Ex. L at 19-20. BigCommerce employs ████████████████████████████ in Austin, and another ██████████████████████ *See id.* at 2-20. This data reflects Mr. Mengoli's testimony that ████████████████████████████████████████████████

████████████████████████████████████████████████

██████████ *See* Ex. C at 46:18 to 47:16. In sum, BigCommerce's headquarters and ██████ ██████████████████████████████ is in this District. So too is its ██████ ████████████████████████████████████████

██████████████████████████[3] The locus of BigCommerce's business is this District.

### 4.     The Public and Private Factors Do Not Show N.D. Cal. as Clearly More Convenient

If the Court abides BigCommerce's flawed framing of its argument, it will balance eight private and public interest factors to decide whether to transfer this case. The private factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to

---

[2] BigCommerce produced Ex. L in Excel format. For ease of reference, as Mr. Mengoli did in deposition, MOV-ology sorted the columns by ██████████████ but did not alter any data.

[3] BigCommerce concealed all this from the Court in its original motion and forced MOV-ology to extract it through venue discovery. The Court should not countenance in a reply any attempt by BigCommerce to pivot and emphasize alternative relief of intra-district transfer to the Austin division based on the facts MOV-ology unearthed through costly and time-consuming discovery.

secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The public factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

"The burden to prove that a case should be transferred for convenience falls squarely on the moving party." *Asetek Danmark A/S v. Shenzhen Apaltek Co., Ltd.*, No. W-21-CV-00501-ADA, 2022 U.S. Dist. LEXIS 82249, at *5 (W.D. Tex. May 6, 2022). "The burden that a movant must carry is not that the alternative venue is more convenient, but that it is clearly more convenient." *Id.* Each factor in this case resolves neutrally or weighs against transfer.

### 4.1.    "Ease of Access to Sources of Proof" Weighs against Transfer

The location of BigCommerce's documents weighs against transfer or neutrally. Each employee on its carefully curated list of potential witnesses has the same extent and ease of access to BigCommerce files from anywhere in the world. And BigCommerce stores its relevant technical and financial documents ███████████████████████████████████████ ██████████████████████ "In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 U.S. Dist. LEXIS 171102, at *5 (W.D. Tex. Sept. 10, 2019).

BigCommerce asks the Court to ignore its headquarters and second office in this District housing ██████████████████████████████████████████████████ because somehow "[a]ll hard copy and electronic documents in Defendants' possession that are likely to relate to MOV-ology's claims are maintained in the ordinary course of business at Defendants'

San Francisco office." Mot. at 8. Taking this claim at face value strains credulity without even examining the support offered: how could BigCommerce know where *all* its relevant documents reside before fact discovery opens? It's also not true. Just one paragraph in Mr. Mengoli's declaration supports this broad claim, and indeed BigCommerce's entire argument. Of course, Mr. Mengoli said something much narrower than his attorneys claim: "The above-identified individuals possess or have access to electronic documents, including design, engineering, procurement, marketing, and financial documents relating to BigCommerce's products and services on equipment located in San Francisco." Mot., Mengoli Decl. ¶ 14.

Even taking Mr. Mengoli's declaration at face value, the "all hard copy and electronic documents" argument vanishes. BigCommerce has not argued, much less proven, that any relevant documents in its possession exist only in hard copy. And, contrary to BigCommerce's attorney argument about what his declaration supports, Mr. Mengoli merely said five employees—Brian Dhatt, David Hauser, Troy Cox, Chris Boulton, and Russell Klein—can access documents from computers in San Francisco. *Id.*, ¶¶ 10, 11. Mr. Cox lives in Australia, so not even all five "likely" witnesses work in San Francisco. *See id.*, ¶ 10. Importantly, in deposition, Mr. Mengoli confirmed ███████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ Ex. C at 71:23 to 73:5. ███████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████ *See id.* at 73:6 to 75:15.

BigCommerce incorrectly posits that its five curated employees' access to documents matters as much as the documents' location. It does not. This Court rejected such an argument in

*BillJCo*, which BigCommerce cites: "[t]he imprecision of [Apple's] representation encompasses a scenario in which Apple's documents are not located in the NDCA at all, but are merely accessible there." *BillJCo, LLC v. Apple Inc.*, No. 6:21-cv-00528-ADA, 2022 U.S. Dist. LEXIS 35391, at *9 (W.D. Tex. Mar. 1, 2022). As here, "none of the Apple personnel BillJCo deposed testified that these documents are also not accessible from Texas." *Id.*

Unlike *BillJCo*, where Apple tried to argue differences in ease of access between this Court and the Northern District of California, BigCommerce's motion says nothing about the actual physical locations of relevant documents. Mr. Mengoli testified that BigCommerce's  Ex. C at 72:9-24. And venue discovery revealed that

According to interrogatory responses verified by Mr. Mengoli,

Ex. M at 4 (emphasis added); *see also* Ex. N at 1. And

Ex. M at 4-5 (emphasis added); *see also* Ex. O at 1.



BigCommerce makes only an insufficiently developed and inaccurate argument about specific employees' access to documents. But ███████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████ And all those folks have equal if not improved access to documents in this District as compared to the Northern District of California. This factor thus resolves slightly against transfer or neutrally for the five employees named by Mr. Mengoli, and firmly against transfer for ██████████ employees in this District.

### 4.2.    "Cost of Attendance for Willing Witnesses" Weighs against Transfer

BigCommerce argues here that four of its five identified witnesses reside in San Francisco, while the fifth lives in Australia. *See* Mot. at 9. But "the convenience of party witnesses is given little weight." *MV3 Partners LLC v. Roku, Inc.*, No. 6:18-cv-00308-ADA, 2019 U.S. Dist. LEXIS 234328, at *11 (W.D. Tex. June 25, 2019). And BigCommerce—which bears the burden of proof—gives no specific reason it expects to call these particular witnesses.

Notably, BigCommerce argued in its motion to dismiss that "Defendants are unaware of what products or services are actually at issue in this case." ECF No. 22 at 4. But when seeking

transfer here BigCommerce suddenly knows with certainty that its five most percipient witnesses happen to all work at offices remote from BigCommerce's Austin headquarters and downtown Austin offices? It cannot, at least not with any semblance of credibility.

Key personnel omitted from BigCommerce's motion but who may testify work in this District, including BigCommerce's CEO and four of his six direct reports:



Ex. P at 1. These direct reports and potential witnesses include the company's Chief Financial Officer, Robert Alvarez, Chief Marketing Officer, Lisa Eggerton, Chief Services Officer, Rob Kaloustian, and Chief Sales Officer, Marc Ostryniec. *See id.* The direct reports and organizations reporting up to these executives have custody of documents and extensive, pertinent knowledge of information related to BigCommerce's revenue and profit from sales of accused products and services, its marketing and sales strategy related to infringing features of its platform, and its customer feedback about infringing functionality. BigCommerce is also trying to hire a Chief Information Officer, ███████████████████████████████████████

████████████████████████████ *See* Ex. Q at 1-2; *see also* Ex. C at 68:2 to 70:4.

The only direct reports to the CEO that BigCommerce mentions in its motion happen to be the two in San Francisco. *See id.* But even much of their teams work out of BigCommerce's

Austin offices. For example, just two of Mr. Dhatt's 10 direct reports works in San Francisco, while five work in Austin, two work in Sydney, and one works remotely in the U.S.:[4]



Ex. R at 1.

_____

[4] Mr. Lipman works for a subsidiary called Feedonomics that has no role in this case.

Why do the direct reports and organizations under BigCommerce's five identified employees matter? Because these personnel and organizations have the most direct knowledge of relevant documents and other evidence and the clearest working understanding of the design and operation of the accused products and services and could themselves testify in this case. To illustrate, Mr. Mengoli testified in deposition about ███████████████████████ ████████████████ *See* Ex. C at 50:17 to 53:18; *see also* Ex. S at 1-4. Two of the five identified employees—Troy Cox and David Hauser—have SVP titles. *See* Mot., Mengoli Decl. ¶ 10. ██████████████████████████████████████ ███████████████████████████████████ ███████████████████████ *See* Ex. S at 2. SVPs ██████████████ ████████████████████████ *Id.* As is typical for any large organization, employees many rungs down the ladder work directly with the deployment, development, and maintenance of specific products and services. This is, of course, why senior executives in deposition typically defer to their direct reports when asked detailed questions about a particular product, service, or financial report. In BigCommerce's version of its ████ ███████████████████████████████████████ ████████████████████████████████ ████████████████ *See* Ex. T at 2; *see also* Ex. C at 54:1 to 55:24.

Neither party has identified important non-party witnesses likely to testify at trial. And BigCommerce's tactical selection of "likely" trial witnesses deserves little weight because BigCommerce claims in other pleadings it does not understand what MOV-ology accuses here and because venue discovery shows the selected witnesses are unlikely the most percipient on the details of infringement and damages. While "the convenience of party witnesses is given

little weight," the overwhelming majority of potential BigCommerce witnesses ███████████ ████████████████ *MV3 Partners*, 2019 U.S. Dist. LEXIS 234328, at *11. ***BigCommerce itself*** staked out the position that this District is the most suitable and convenient venue for trial when it met and conferred with MOV-ology about intra-district transfer. It only pivoted to the Northern District of California—and scrubbed facts about its presence in this District from its motion—when MOV-ology did not consent to intra-district transfer. The Court should view BigCommerce's representations about its likely witnesses and their convenience with skepticism.

In any case, MOV-ology is willing, if requested, to help ease any inconvenience caused by BigCommerce witnesses traveling to Waco for trial. MOV-ology will reimburse reasonable travel expenses and per diem lodging rates for BigCommerce witnesses based in the Northern District of California who testify at trial in Waco. *See, e.g.*, *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-CV-00977-ADA, 2020 U.S. Dist. LEXIS 248378, at *14, n.2 (W.D. Tex. Dec. 31, 2020) ("To alleviate any concern of the rare possibility of added costs, VLSI has offered to cover these witnesses' costs of attendance in Waco."). And MOV-ology will, as is customary, depose any BigCommerce witnesses who live and work outside of this District by remote means or wherever they work and live. This factor thus weighs against transfer or, at worst, resolves neutrally.

### 4.3.  "All Other Practical Problems" Weighs against Transfer

BigCommerce's motion correctly notes that MOV-ology has no co-pending lawsuits. But moving this case to San Francisco still introduces practical problems for litigants and witnesses. Most poignantly, the cost of living and corresponding per diem cost of lodging, meals, and incidental expenses in the Northern District of California far exceeds those costs in Waco. According to the General Services Administration's per diem guidelines for Federal employees, daily costs of travel in San Francisco during trial would more than ***double*** those costs in Waco:

| GSA 2022 Per Diem | Lodging (Nightly Avg.) | Meals & Incidentals (Non-Travel Day) | Total (Non-Travel Day) |
|---|---|---|---|
| **Waco** | $107 | $64 | $171 |
| **San Francisco** | $291.75 | $79 | $370.75 |
| **Daily Difference** | SF +$184.75 | SF +$15 | SF +$199.75 |

*See* Ex. U at 1-4. Transfer to Northern California thus presents practical problems not present in this District and this factor weighs against transfer, but carries less weight than others.

### 4.4.    "Court Congestion" Weighs against Transfer

BigCommerce claims this private factor resolves neutrally despite repeated holdings by this Court to the contrary. Indeed, "an appreciable difference in docket congestion, cases per judgeship, and estimated time-to-trial exists" between this Court and the Northern District of California, considering this Court's "proven track record to expeditiously resolve patent cases before it." *E.g.*, *Monterey Rsch., LLC v. Broadcom Corp.*, No. W-21-CV-00541-ADA, 2022 U.S. Dist. LEXIS 30364, at *46 (W.D. Tex. Feb. 21, 2022). The average time to trial in the Northern District of California exceeds 45 months. *See Scramoge Tech. Ltd. v. Samsung Elecs. Co. Ltd.*, No. 6:21-cv-00454-ADA, 2022 U.S. Dist. LEXIS 92262, at *14-16 (W.D. Tex. May 16, 2022). But "this Court consistently reached trials faster than the NDCA, with an approximate time to trial of two years." *Id.* (citing cases). Based on "'the strong public policy favoring expeditious resolution of litigation,'" this factor disfavors transfer. *Monterey Rsch.*, 2022 U.S. Dist. LEXIS, at *47-48 (quoting *Kahn v. General Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989)).

### 4.5.    "Local Interests" Weigh against Transfer

Here more than anywhere else does BigCommerce's sleight-of-hand comparison of only the Waco division to the Northern District of California comes undone. BigCommerce cites two ***intra***-district transfer cases to argue a local interest exists "when the accused infringer is located

within that division." Mot. at 11. But the one *inter*-district transfer case BigCommerce cites weighs against transfer because the Federal Circuit there compared the local interests of the entire Eastern District of Texas to the local interests of the Middle District of North Carolina, finding the plaintiff had no connection to the Eastern District. *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009), *cited in* Mot. at 11. This is the correct analysis.

The local interests of this District in the present litigation far outweigh any conceivable local interests of the Northern District of California. BigCommerce has its headquarters and an engineering campus ███████████████████████ in this District. These offices host nearly ████████████████████████. By contrast, BigCommerce ████████████████████ since moving to transfer and █████████████ ████████████████████████ *Compare* Mot., Mengoli Decl. ¶ 6, *with* Ex. J (Mengoli Ex. 11), *and* Ex. C at 31:6 to 32:19; *see also* Ex. C at 46:18 to 47:16. In sum, this factor weighs strongly against transfer.

**5.     Conclusion**

Transfer to the Northern District of California under any set of facts would be improper because venue as to BigCommerce Holdings, Inc. is improper in that court. BigCommerce further applies the wrong legal standard, confusing standards for *intra*-district transfer with those for *inter*-district transfer. And when viewed through the proper lens, the weight of documents, witnesses, and public and private interest factors all resolve neutrally or against transfer. "Defendants should expect and accept some inconvenience when haled into Court." *Asetek*, 2022 U.S. Dist. LEXIS 82249, at *3. Some inconvenience is the maximum hardship to BigCommerce if this case proceeds in this Court. BigCommerce's motion should thus be denied.

Respectfully submitted,

Dated: June 23, 2022                        By: */s/ Patrick A. Fitch*
                                            Karl Rupp
                                            State Bar No. 24035243
                                              krupp@soreylaw.com
                                          SOREY & HOOVER LLP
                                          100 North Sixth Street, Suite 502
                                          Waco, Texas 76701
                                          Telephone: 903-230-5600

                                          Robert R. Brunelli (admitted *pro hac vice*)
                                              rbrunelli@sheridanross.com
                                          Matthew C. Holohan (admitted *pro hac vice*)
                                              mholohan@sheridanross.com
                                          Patrick A. Fitch (admitted *pro hac vice*)
                                              pfitch@sheridanross.com
                                          Alex W. Ruge (admitted *pro hac vice*)
                                              aruge@sheridanross.com
                                          SHERIDAN ROSS P.C.
                                          1560 Broadway, Suite 1200
                                          Denver, Colorado 80202
                                          Telephone: 303-863-9700
                                          Facsimile:  303-863-0223
                                          litigation@sheridanross.com

                                        *Attorneys for MOV-ology LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on June 23, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(b).

The undersigned further certifies that on June 23, 2022, this document was served via email on all counsel of record.

By: */s/ Lori R. Brown*
   Lori R. Brown
   SHERIDAN ROSS P.C.
   1560 Broadway, Suite 1200
   Denver, Colorado 80202
   Telephone:   303-863-9700
   Facsimile:   303-863-0223
   litigation@sheridanross.com

   *Attorney for Plaintiff MOV-ology LLC*