**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| MOV-OLOGY LLC, | |
| *Plaintiff*, | Case No. 6:22-cv-00084-ADA |
| v. | PATENT CASE |
| BIGCOMMERCE HOLDINGS, INC., BIGCOMMERCE PTY. LTD., and BIGCOMMERCE, INC. | JURY TRIAL DEMANDED |
| *Defendants*. | |

**<u>DEFENDANTS' OPENING CLAIM CONSTRUCTION BRIEF</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   OVERVIEW OF THE ASSERTED PATENTS................................................... 1

III.  DISPUTED TERMS ........................................................................................... 3

    A.   Term Nos. 1 and 2: "product feed" and "payment gateway" ................................ 3

    B.   Term No 3: "incomplete"........................................................................ 6

    C.   Term Nos. 4-5: "computer hardware configured to . . . " ....................................... 7

    D.   Term No 6: "wherein obtaining . . ." ................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*,
   521 F.3d 1328 (Fed. Cir. 2008)........................................................................10

*Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*,
   813 F. App'x 522 (Fed. Cir. 2020) .....................................................................3

*In re Donaldson Co.*,
   16 F.3d 1189 (Fed.Cir.1994) (*en banc*) .............................................................8

*Dyfan, LLC v. Target Corp.*,
   28 F.4th 1360 (U.S. Fed. Cir. 2022) ...................................................................8

*Irdeto Access, Inc. v. Echostar Satellite Corp.*,
   383 F.3d 1295 (Fed. Cir. 2004)...........................................................................3

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014)..............................................................................................6

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)...........................................................................4

*Tracktime, LLC v. Amazon.com, Inc.*,
   No. CV 18-1518 (MN), 2021 WL 2823163 (D. Del. July 7, 2021) .......................10

*Williamson v. Citrix Online, LLC*,
   792 F.3d 1339 (Fed. Cir. 2015).....................................................................9, 10

**Statutes**

35 U.S.C. § 112(f)......................................................................................................11

35 USC 112, ¶6 ...........................................................................................................8

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| Defendants | BigCommerce Holdings, Inc., BigCommerce Pty. Ltd., and BigCommerce, Inc. |
| Plaintiff | MOV-ology, LLC |
| The "'282 Patent" | U.S. Patent No. 9,286,282 |
| The "'358 Patent" | U.S. Patent No. 10,769,358 |
| Asserted Patents | U.S. Patent Nos. 9,286,282 and 10,769,358 |
| POSITA | A person of ordinary skill in the art |

## TABLE OF EXHIBITS

| Ex. No. | Description |
|---|---|
| 1 | U.S. Patent No. 9,286,282 |
| 2 | U.S. Patent No. 10,769,358 |
| 3 | MOV-ology's April 14, 2022 Preliminary Infringement Contentions |
| 4 | July 30, 2019, Final Rejection during prosecution of the '358 Patent |
| 5 | October 17, 2019, Applicant Remarks during prosecution of the '358 Patent |
| 6 | Expert Declaration of Tal Lavian, Ph.D. Regarding Claim Construction |

## I.      INTRODUCTION

This case involves two patents from the same patent family: the '282 Patent and the '358 Patent.[1] The Asserted Patents are generally directed to solving the problem of lost business due to online consumers abandoning web forms prior to completion. *See* '282 Patent at 1:37-43 ("System and methods are disclosed to retrieve data from partially completed electronic forms and use the retrieved data to identify the consumer who accessed the electronic form."). Plaintiff's preliminary infringement contentions contend that Defendants infringe claims 1-4 and 9-11 of the '282 Patent and claims 1-4 and 17-20 of the '358 Patent. *See* Ex. 3 [Preliminary Infringement Contentions] at 2. As detailed in Defendants' pending Motion to Dismiss, Plaintiff does not accuse a specific product or service, but rather generally alleges that Defendants' "BigCommerce platform" performs the claimed methods and/or incorporates the claimed apparatus. *See generally* Dkt. Nos. 22, 30.

## II.     OVERVIEW OF THE ASSERTED PATENTS

The Asserted Patents explain that "[b]usiness entities lose thousands of on-line prospective consumers each day" because those consumers begin the process of filing out online forms but fail to complete them "for a variety of reasons that are often unknown to the business entity." '282 Patent at 1:14-24. Those prospective consumers and their partially entered information is subsequently lost to the business entity. The Asserted Patents purport to offer a universal solution to this business problem: systems and methods that "retrieve data from partially completed

---

[1] The Asserted '358 and '282 Patents share the same inventors, specifications, figures, and claim priority to the same Provisional Application No. 61-908,349. The primary difference is that the '282 Patent is entitled "Obtaining Data from ***Abandoned*** Electronic Forms" and its claim utilize the term "***abandoned***," whereas the '358 Patent is titled "Obtaining Data from ***Incomplete*** Electronic Forms" and its claims utilize the term "***incomplete***." *See generally* Exs. 1, 2. Consequently, all citations are made with reference to the '282 Patent specification unless otherwise stated.

electronic forms and use the retrieved data to identify the consumer who accessed the electronic form." *Id.* at 1:37-43.

**102:** Online Vistor

**114:** Abandoned Web Form

**112:** Identification & Marketing Service

**118:** Persona Report

**120:** Intelligent Matrix



**FIG. 1**

That solution is shown in Figure 1 annotated above, which depicts online visitor 102 visiting website 104, starting to fill out web form 114, but then abandoning the effort. *Id.* at 1:65-2:15. Following a determination of abandonment, "identification and marketing service 112 scrapes the visitor data" from the incomplete form and saves it in "identification and marketing database 110" where "identification and marketing service 112 uses [a] novel data scraping script to scrape the data." *Id.* at 4:19-24. The identification and marketing service 112 may then combine that scraped data with other data such as "additional visitor contact 116" or data from previous completed transactions in "database 108" to create a "personal attribute report 118."  *Id.* at 4:19-63. Finally, "intelligent marketing matrix module 120 [may be] configured to determine a preferred method of communication" for the prospective consumer. *Id.* at 4:64-5:3.

2

### III.   DISPUTED TERMS

#### A.   Term Nos. 1 and 2: "product feed" and "payment gateway"

| Term(s) | Claim(s) | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|---|
| **No. 1:** "wherein the data is obtained from the [abandoned/incomplete] electronic form without a product feed" | '282 Pat, cls. 3, 11; '358 Pat, cl. 3 | Plain and ordinary | Indefinite |
| **No. 2:** "wherein the [incomplete] electronic form does not include a payment gateway" | '282 Pat, cls. 4, 12 '358 Pat, cls. 4, 18 | | |

In the dependent claims listed above, the Asserted Patents recite methods and an apparatus for obtaining data from abandoned or incomplete electronic forms "without a product feed" and from electronic forms that "do[] not include a payment gateway." These terms are indefinite. Neither "product feed" nor "payment gateway" are defined in the intrinsic record, nor do they have a standard industry meaning. "[A]bsent [] an accepted meaning, we construe a claim term only as broadly as provided for the patent itself. . . The duty [] falls on the patent applicant to provide a precise definition for the disputed term." *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295, 1300 (Fed. Cir. 2004). Moreover, nothing in the intrinsic or extrinsic record distinguishes how data is obtained "without a product feed" and from electronic forms that "do[] not include a payment gateway" from how it would be obtained from electronic forms that did include those features.

To begin, the "product feed" and "payment gateway" terms are unclear in the context of the claim language. *Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, 813 F. App'x 522, 526 (Fed. Cir. 2020) ("Claim 1 of the '951 patent is, on its face, entirely unclear as to the meaning of [the disputed term]"). Nothing in the claim language explains how obtaining data without a "product feed" or from forms that do not include a "payment gateway" could be understood by a POSITA. Ex. 6 ("Lavian Decl.") at ¶ 44. Rather, the claims merely recite that the end result is accomplished.

3

None of the remaining claims explain what a "product feed" or a "payment gateway" is or how such forms and methods differ from other electronic forms or data retrieval methods. *Id.* at ¶¶ 44-45; *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("Other claims of the patent in question, both asserted and unasserted, can also be valuable sources of enlightenment as to the meaning of a claim term.").

The same is true with respect to the specification, which provides no guidance as to what constitutes a "product feed" or "payment gateway" or how these terms are to be understood by a POSITA in the context of obtaining data. Lavian Decl. at ¶¶ 45-47. For example, the term "product feed" only appears twice in the specification: once in the "Summary" section reiterating the claim language and again in reference to Figure 3. *See* '282 Patent at Fig. 3, 7:66-8:2 ("The script 338 embedded on the webpages comprising the eForm 326, 336 advantageously scrapes data from the eForm 326, 336 without a product feed, and is easy to install and update."). However, Figure 3 is a block diagram showing the operation of the claimed methods and systems at a high level of abstraction in which eForm 336 is one of many functionally-described blocks. *Id.*



**FIG. 3**

Similarly, the term "payment gateway" appears four times in the specification, none of which provide a definition for the term. Lavian Decl. at ¶¶ 45, 48. And as with the "product feed" term, the only reference to "payment gateway" in the Figures is eForm 336 shown in Figure 3. For example, two of four instances in which "payment gateway" appears in the specification occur in the "Summary" section reiterating the claim language. The remaining two instances provides no additional guidance. *See* '282 Patent at 6:61-64 ("In an embodiment, the eForm 336 does not have a payment gateway and permits online entry of data. In another embodiment, the eForm 336 is any electronic form that does not have a payment gateway."). Compounding the problem, immediately following the disclosure above, the specification notes that "[e]xamples of electronic or computer-generated forms 336 are registration forms, survey forms, marketing research forms, application forms, questionnaires, and the like." *Id.* at 6:64-67. However, the specification does not indicate whether these are examples of electronic forms generally, or specific examples of electronic forms that do not have a "product feed" and/or "payment gateway."

5

Accordingly, these terms do not provide a POSITA with the metes and bounds necessary to determine the scope of the claims with reasonable certainty. Lavian Decl. at ¶¶ 43-49. These terms are indefinite because, when read in light of the intrinsic and extrinsic evidence, they fail to "inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

### B.  Term No 3: "incomplete"

| Term(s) | Claim(s) | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|---|
| **No. 3:** "incomplete" | '358 Pat, cls. 1-4, 17-20 | Plain and ordinary | "abandoned" |

The '358 Patent uses the terms "incomplete" and "abandoned" synonymously. Apart from the claims and title of the '358 Patent, the term "incomplete" appears only three times in the '358 specification. At least one of these three instances indicates that the '358 Patent's use of "incomplete" is directly synonymous with "abandoned": "[T]he identification and marketing service 212 scrapes the data 214 from the incomplete and/or abandoned eForms 206." '358 Patent at 5:58–60. On the other hand, some variation of the term "abandoned" is used over 60 times. The abstract further demonstrates that "incomplete" forms are synonymous with "abandoned" forms:

> Visitors that ***abandon*** electronic or computer-generated forms before completing and submitting the form are lost to business entities. Data obtained from ***abandoned*** electronic or computer-generated forms is used to identify these lost visitors. Sometimes a unique script embedded on the webpages scrapes the data from the forms. The obtained data is further utilized to market or remarket to the lost consumers by sending personalized messages via a preferred communication medium.

'358 Patent at Abstract (emphasis added). The remainder of the specification discloses obtaining data from ***abandoned*** electronic forms. *See generally* '358 Patent.

Claim 19 of the '358 Patent further confirms the synonymous use of these terms. Specifically, Claim 19 depends from claim 17, which recites "[a] method to obtain data from

incomplete electronic forms." Claim 19 further recites "determining when the incomplete electronic form has been ***abandoned*** by the user." This determination step of Claim 19 presumes that the incomplete form of Claim 17 has likewise been abandoned. In other words, an incomplete form is an abandoned form. Accordingly, based on the '358 Patent's use of these terms in the specification and claims, a POSITA would understand "incomplete," as recited in the '358 Patent, to be synonymous with "abandoned." Lavian Decl. at ¶¶ 51-54.

Moreover, MOV-ology's own Preliminary Infringement Contentions use these terms synonymously. For example, Claim 3 of the '358 Patent recites that "data is obtained from the incomplete electronic form without a product feed," and MOV-ology asserted that "BigCommerce's systems are configured to obtain data from ***abandoned*** web forms without a product feed." Ex. 3. Ex. B ['358 Patent Chart] at 36 (emphasis added). Similarly, MOV-ology used the term "abandoned" in place of "incomplete" for Claims 4 and 18 of the '358 Patent.

| Claim 4 | Exemplary Accused Product: BigCommerce Platform with Integrated Application Partners |
|---|---|
| The method of claim 1 wherein the incomplete electronic form does not include a payment gateway. | BigCommerce's systems are configured to obtain data from abandoned web forms that do not include a payment gateway, such as a contact form or any custom-built form: <br><br> ☐ Built-in Contact Form |

| Claim 18 | Exemplary Accused Product: BigCommerce Platform with Integrated Application Partners |
|---|---|
| The method of claim 17 wherein the incomplete electronic form does not include a payment gateway. | BigCommerce's systems are configured to obtain data from abandoned web forms that do not include a payment gateway, such as a contact form or any custom-built form: <br><br> ☐ Built-in Contact Form |

*See id.* at 38, 74.

### C.    Term Nos. 4-5: "computer hardware configured to . . . "

| Term(s) | Claim | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|---|
| 9. An apparatus to obtain data from abandoned electronic forms, the apparatus comprising: <br> **[Term No. 4]** <u>computer hardware configured to determine that an electronic form accessed by a user has been abandoned by the user, the</u> | '282 Pat, cl. 9 | Plain and ordinary | Means-plus-function term governed by 35 USC 112, ¶6. |

| | | | |
|---|---|---|---|
| electronic form having embedded computer-executable instructions and one or more fields configured to accept user-entered text, the electronic form comprising at least one hypertext markup language (HTML) element associated with the one or more fields, the at least one HTML element having at least one attribute; <br><br> **[Term No. 5]** <u>computer hardware configured to obtain data from the abandoned electronic form with the embedded computer-executable instructions by building a data structure based on the abandoned electronic form and parse the data structure to obtain the at least one HTML element</u>; and <br><br> computer hardware configured to store one or more of the at least one HTML element, the at least one attribute, and the user-entered text. | | | **Function**: claim language <br><br> **Structure**: The specification fails to set forth any algorithm or corresponding structure for the claimed function. Claims are thus indefinite. |

Claim 9 of the '282 Patent contains terms reciting "computer hardware configured to . . ." determine a form has been abandoned and to obtain data from the abandoned form. These terms are wholly functional means-plus-function terms. They are also indefinite because they operate at the point of novelty: the recited hardware apparatus somehow determines that an electronic form has been abandoned and obtains data from that form, yet the specification fails to disclose any corresponding structure. *See In re Donaldson Co*., 16 F.3d 1189 (Fed.Cir.1994) (*en banc*).

The "means-plus-function analysis is a two-step process." *Dyfan, LLC v. Target Corp*., 28 F.4th 1360, 1365 (U.S. Fed. Cir. 2022) citing *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1349-51 (Fed. Cir. 2015). "The first step is to determine whether a claim limitation is drafted in means-plus-function format, which requires us [] to determine whether it connotes sufficiently definite structure to a person of ordinary skill in the art." *Id*. If not, then the second step requires determining "what structure, if any, disclosed in the specification corresponds to the claimed function." *Id.* Term Nos. 4-6 fail both steps.

Although these terms do not include the word "means," the rebuttal presumption against application of § 112, ¶ 6 is overcome. Like the "distributed learning control module" term in *Williamson*, the "computer hardware configured to . . ." terms fail to recite sufficiently definite structure. 792 F.3d at 151. Rather, these terms are defined only by the functions recited: computer hardware that determines form abandonment and obtains the abandoned data. Lavian Decl. at ¶¶ 57-59. These terms do not connote structure to a POSITA and there was no known computer hardware inherently capable of performing these functions. Lavian Decl. at ¶¶ 56-64. Indeed, the Asserted Patents concede that functions in these terms operate at the point of novelty. *See, e.g.,* '282 Patent at 4:22-24 ("the identification and marketing service 112 uses ***novel*** data scraping script to scrape the data.") (emphasis added).

Moreover, the specification acknowledges that these terms recite "specialized function[s]" of determining an electronic form has been abandoned, scraping the data, and storing the data that "cannot be implemented in a general purpose computer, but instead must be implemented in a special purpose computer—a general purpose computer programmed to perform particular functions pursuant to instructions from program software." *Williamson*, 792 F.3d at 1352; Lavian Decl. at ¶¶ 59, 64. For example:

> The identification and marketing service 340 comprises a computing device 342 that comprises a processor 344 and memory 346. The processor 344 can comprise controller circuitry, processor circuitry, processors, general-purpose single-chip or multi-chip microprocessors, digital signal processors, embedded microprocessors, microcontrollers, pro- gram logic, other substrate configurations representing data and instructions, and the like. The memory [346] comprises programs 352, such as an identification program 356, a marketing program 354, and the like. The memory [346] further comprises scraped data 348 scraped from the visitor accessed Form 326, and one or more databases 350. In an embodiment, the scraped data 348 is added to the database 350. The database 350 can comprise one or more logical and/or physical data storage systems for storing data and applications used by the computing device 342. ***Each of the functional components of the identification and marketing service 340 may be implemented in program code executed by one or more general or special purpose computers.***



**FIG. 3**

'282 Patent at 7:8-29; Fig. 3. Where claims require a special purpose computer, the specification must disclose corresponding structure in the form of an algorithm. *Williamson*, 792 F.3d at 1352. But no such algorithm is disclosed here. Lavian Decl. at ¶ 61. Rather, the specification provides only a high-level pictorial and linguistic recitations of the terms' functions such as that "[a]t block 504, the script 338 scrapes data from the eForm 326, and at block 506, the scraped data 348 is received by the identification and marketing service 340." '282 Patent at 11:17-19; *see also Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1335 (Fed. Cir. 2008) (holding that disclosure of "pictorial and mathematical ways of describing the claimed function . . . is not enough to transform the disclosure of a general-purpose microprocessor into the disclosure of sufficient structure to satisfy section 112 paragraph 6."); *Tracktime, LLC v. Amazon.com, Inc.*, No. CV 18-1518 (MN), 2021 WL 2823163, at *7 (D. Del. July 7, 2021) (explaining that a specification cannot satisfy the algorithm requirement by "simply repeat[ing] the function without

providing corresponding structure [or] describ[ing] applications and embodiments of the claimed [] function").

Finally, claim 9 of the '358 Patent recited very similar "computer hardware configured to . . ." limitations and was subject to a § 112(f) rejection during prosecution. A comparison between claim 9 of the '282 Patent and claim 9 of the '358 Patent is provided below, where applicant's October 17, 2019 amendments in response to the examiner's July 30, 2019 § 112(f) rejection are shown in red.[2] *See generally* Ex. 4 ['358 Patent, July 30, 2019 Final Rejection]; Ex. 5 ['358 Patent, October 17, 2019 Applicant Remarks]. In the July 30, 2019, final rejection, the examiner noted that the limitations recited in then-existing claim 9 of the '358 Patent were means-plus-function claims:

> includes one or more claim limitations that do not use the word "means," but are nonetheless being interpreted under 35 U.S.C. § 112(f) because the claim limitation(s) uses a generic placeholder that is coupled with functional language without reciting sufficient structure to perform the recited function and the generic placeholder is not preceded by a structural modifier. Such claim(s) and corresponding limitation(s) is/are: In claim 9, the limitation(s) of the form "computer hardware configured to . . ."

Ex. 4 at 4. In response, '358 Patent applicant amended claim 9 as shown below in red. For at least these reasons, the "computer hardware configured to . . ." terms are indefinite.

---

[2] Note that claim 9 was amended once more before allowance. Those subsequent amendments are not reflected in the table.

| '282 Patent, Cl. 9 (Allowed Claim) | '358 Patent, Cl. 9 (Oct. 17, 2019 Amendments) |
|---|---|
| 9. An apparatus to obtain data from abandoned electronic forms, the apparatus comprising:<br><br>computer hardware configured to determine that an electronic form accessed by a user has been abandoned by the user, the electronic form having embedded computer-executable instructions and one or more fields configured to accept user-entered text, the electronic form comprising at least one hypertext markup language (HTML) element associated with the one or more fields, the at least one HTML element having at least one attribute;<br><br>computer hardware configured to obtain data from the abandoned electronic form with the embedded computer-executable instructions by building a data structure based on the abandoned electronic form and parse the data structure to obtain the at least one HTML element; and<br><br>computer hardware configured to store one or more of the at least one HTML element, the at least one attribute, and the user-entered text. | 9. An apparatus to obtain data from incomplete electronic forms, the apparatus comprising:<br><br>~~computer hardware~~ **data scraping script comprising a script embedded in a web page, the data scraping script executing on one or more computer processors, the data scraping script** configured to assess an incomplete electronic form associated with at least one webpage, the incomplete electronic form having one or more fields configured to accept user-entered text, the incomplete electronic form comprising at least one hypertext markup language (HTML) element associated with the one or more fields;<br><br>**the data scraping script further** ~~computer hardware~~ configured to obtain data from the incomplete electronic form by obtaining a protocol of the at least one webpage, writing a script tag associated with a script file to the at least one webpage according to the protocol, the script tag configured to place the script file onto the at least one webpage, the script file configured to locate the at least one HTML element, building a data structure based on the incomplete electronic form, and parsing the data structure to obtain the at least one HTML element;<br><br>**the data scraping script further** ~~computer hardware~~ configured to store one or more of the at least one HTML element, and the user-entered text;<br><br>~~computer hardware~~ **an identification service process executing on one or more computer processors, the identification service process** configured to communicate with one or more databases to obtain additional information about the user based at least in part on the user-entered text obtained from the incomplete electronic form;<br><br>**the identification service process** ~~computer hardware~~ further configured to store contact profile information that comprises at least a portion of the user-entered text obtained from the incomplete electronic form and at least a portion of the additional information about the user obtained from the one or more databases; and<br><br>**identification service process further** ~~computer hardware~~ configured to send a personalized message to the user based at least in part on the at least one HTML element, and the contact profile information. |

D.      Term No 6: "wherein obtaining . . ."

| Term(s) | Claim(s) | Plaintiff's Proposal | Defendants' Proposal |
|---------|----------|---------------------|---------------------|
| **No. 6:** "wherein obtaining the at least one HTML element from the incomplete electronic form" | '358 Pat, cl. 20 | Plain and ordinary | Indefinite |

Claim 20 lacks antecedent basis and is therefore indefinite. Claim 20 depends from method

claim 17 and narrows the step of "obtaining the at least one HTML element from the incomplete

electronic form." '358 Patent at cl. 20. No such step related to "obtaining" at least one HTML

element, however, is found in independent claim 17.

| '282 Patent, Claim 17 | '282 Patent, Claim 20 |
|------------------------|------------------------|
| 17. A method to obtain data from incomplete electronic forms, the method comprising: <br><br>   assessing an incomplete electronic form comprising at least one hypertext markup language (HTML) element and user-entered text entered by a user; <br><br>   ***obtaining a protocol*** of at least one webpage associated with the incomplete electronic form; <br><br>   writing a script tag associated with a script file to the at least one webpage according to the protocol, the script tag configured to place the script file onto the at least one webpage, the script file configured to ***locate the at least one HTML element***; <br><br>   building a data structure based on the incomplete electronic form that comprises at least the user-entered text; <br><br>   communicating with one or more databases to obtain   additional information about the user based at least in part on the user-entered text obtained from the incomplete electronic form; <br><br>   storing contact profile information that comprises at least a portion of the user-entered text obtained from the incomplete electronic form and at least a portion of the additional information about the user obtained from the one or more databases; and <br><br>   sending the user, a personalized message based at least in part on the at least one HTML element and the contact profile information. | 20. The method of claim 17 ***wherein obtaining the at least one HTML element from the incomplete electronic form comprises*** scraping the data from the incomplete electronic form. |

The preamble of Claim 20 recites: "[t]he method of claim 17." The subsequent "wherein" clause establishes that "obtaining" the at least one HTML element is a necessary step of the method disclosed in Claim 17. But, as noted above, Claim 17 contains no such step. Claim 17 recites three operations on the "at least one HTML element" referenced in Claim 20: (1) "**assessing** an incomplete electronic form comprising at least one hypertext markup language (HTML) element"; (2) "**locate** the at least one HTML element"; and (3) "**sending** the user, a personalized message based at least in part on the at least one HTML element." '358 Patent at cl. 17 (emphasis added). None of these steps relate to Claim 20's step of "**obtaining** the at least one HTML element." *See* Lavian Decl. at ¶¶ 66-70.

While Claim 17 includes an "obtaining" step, that step recites "obtaining a protocol of at least one webpage associated with the incomplete electronic form." Obtaining a protocol of a webpage is a straightforward and known operation to a POSITA. *Id.* at ¶ 68. Obtaining an HTML element—*i.e.*, the incomplete form data abandoned by the user—is the alleged point of novelty claimed by the Asserted Patents. *Id.* at ¶¶ 34-38, 68.

Merely replacing "locate" with "obtain" in claim 17 does not alleviate the problem. The '358 Patent specification does not use "locate" and "obtaining" interchangeably or synonymously. *Id.* at ¶ 69. For example, Claim 9 utilizes both terms:

> the data scraping script further configured to obtain data from the incomplete electronic form by obtaining a protocol of the at least one webpage, writing a script tag associated with a script file to the at least one webpage according to the protocol, the script tag configured to place the script file onto the at least one webpage, the script file configured to **locate** the at least one HTML element, building a data structure based on the incomplete electronic form, and parsing the data structure to **obtain** the at least one HTML element

'358 Patent at cl. 9 (emphasis added). In the method of the claimed invention, the "locating" of the HTML element or abandoned data by the script is a predicate step that must be carried out before the data can be subsequently "obtained." Lavian Decl. at ¶ 69.  This basic order of operations is

14

consistent with the specification in the context of a script—the embodiment recited in the '358 Patent claims, including claims 17 and 20. *See, e.g.,* '358 Patent at 9:6–10. ("In another embodiment, the entered data is scraped using semantic annotation recognizing. The webpages being scraped may embrace metadata or semantic markups and annotations, which can be used to locate specific data snippets.").

For at least these reasons, a POSITA would be unable to determine where this step occurs in the method disclosed in Claim 17, or at a minimum, how this step fits into the overall method of Claim 17. Lavian Decl. at ¶ 70. Without antecedent basis for "obtaining the at least one HTML element" in Claim 17, a POSITA would not be able to reasonably ascertain the scope of Claim 20. *Id.* Accordingly, Claim 20 is indefinite.

Dated: July 21, 2022                    FISH & RICHARDSON P.C.


By:  *Michael R. Ellis*
     Neil J. McNabnay
     njm@fr.com
     Texas Bar No. 24002583
     Lance Wyatt
     wyatt@fr.com
     Texas Bar No. 24093397
     Michael R. Ellis
     ellis@fr.com
     Texas Bar No. 24102726
     Ashu Balimba
     balimba@fr.com
     Texas Bar No. 24099369
     FISH & RICHARDSON
     1717 Main Street, Suite 5000
     Dallas, TX 75201
     (214) 747-5070 (Telephone)
     (214) 747-2091 (Facsimile)


     ***Attorneys for Defendants
     BigCommerce Holdings, Inc.,
     BigCommerce Pty. Ltd., and
     BigCommerce, Inc.***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on July 21, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Civil Rule 6.1.

*/s/ Michael R. Ellis*

Michael R. Ellis