**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

MOV-OLOGY LLC,

     *Plaintiff*,

        v.

BIGCOMMERCE HOLDINGS, INC.,
BIGCOMMERCE PTY. LTD., and
BIGCOMMERCE, INC.

     *Defendants*.

Case No. 6:22-cv-00084-ADA

PATENT CASE

JURY TRIAL DEMANDED

**DEFENDANTS' REPLY CLAIM CONSTRUCTION BRIEF**

## <u>TABLE OF CONTENTS</u>

I.      TERM NOS. 1 AND 2: "PRODUCT FEED" AND "PAYMENT GATEWAY"..............1

    A.      The scope of these terms is not inferable from the specification..........................1

    B.      MOV-ology provides no intrinsic evidence of these terms' meaning ...................2

    C.      There is no evidence that these terms have meaning to a POSITA ........................4

II.     TERM NO 3: "INCOMPLETE"........................................................................5

III.    TERM NOS. 4-5: "COMPUTER HARDWARE CONFIGURED TO . . . " ...................7

    A.      Term Nos. 4 and 5 are subject to § 112 ¶ 6 ..........................................7

    B.      The specification fails to disclose algorithms sufficient to connote structure ........8

        1.      Term No. 4: determining form abandonment .............................................8

        2.      Term No. 5: obtaining data from abandoned forms...................................9

IV.     TERM NO. 6: "WHEREIN OBTAINING . . ." ..............................................10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bell & Howell Document Management Prod. Co. v. Altek Sys.*,
132 F.3d 701 (Fed. Cir. 1997)................................................................................4, 5

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
783 F.3d 1374 (Fed. Cir. 2015)..............................................................................1

*CellCast Techs., LLC v. United States*,
150 Fed. Cl. 353 (2020) .........................................................................................2

*Dyfan, LLC v. Target Corp.*,
28 F.4th 1360 (Fed. Cir. 2022) ..............................................................................8

*Inguran, LLC v. ABS Glob., Inc.*,
No. 17-CV-446-WMC, 2019 WL 943515 (W.D. Wis. Feb. 26, 2019) ..................1

*Liebel-Flarsheim Co. V. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004)................................................................................5

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995)..................................................................................4

*Noah Sys. Inc. v. Intuit Inc.*,
675 F.3d 1302 (Fed. Cir. 2012)..............................................................................9

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)..............................................................................2

*Plastpro, Inc. v. Therma-Tru Corp.*,
378 F. Supp. 2d 519 (D.N.J. 2005) ........................................................................3

*Solomon v. Kimberly-Clark Corp.*,
216 F.3d 1372 (Fed. Cir. 2000)..............................................................................4

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)................................................................................3

**Statutes**

35 U.S.C. § 112, ¶ 2 ....................................................................................................4

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| Defendants | BigCommerce Holdings, Inc., BigCommerce Pty. Ltd., and BigCommerce, Inc. |
| Plaintiff | MOV-ology, LLC |
| The "'282 Patent" | U.S. Patent No. 9,286,282 |
| The "'358 Patent" | U.S. Patent No. 10,769,358 |
| Asserted Patents | U.S. Patent Nos. 9,286,282 and 10,769,358 |
| POSITA | A person of ordinary skill in the art |
| "Resp." or "Response" | MOV-ology's Responsive Claim Construction Brief (Dkt. No. 47) |
| "Lavian Declaration" or "Lavian Decl." | Exhibit 6, Opening Expert Declaration of Tal Lavian, Ph.D. Regarding Claim Construction (Dkt No. 42-6) |
| "Lavian Supplemental Declaration" or "Lavian Supp. Decl." | Exhibit 7, Supplemental Expert Declaration of Tal Lavian, Ph.D. Regarding Claim Construction |

## TABLE OF EXHIBITS

| Ex. No. | Description |
|---|---|
| 1 | U.S. Patent No. 9,286,282 |
| 2 | U.S. Patent No. 10,769,358 |
| 3 | MOV-ology's April 14, 2022 Preliminary Infringement Contentions |
| 4 | July 30, 2019, Final Rejection during prosecution of the '358 Patent |
| 5 | October 17, 2019, Applicant Remarks during prosecution of the '358 Patent |
| 6 | Opening Expert Declaration of Tal Lavian, Ph.D. Regarding Claim Construction |
| 7 | Supplemental Expert Declaration of Tal Lavian, Ph.D. Regarding Claim Construction |

I.      **TERM NOS. 1 AND 2: "product feed" and "payment gateway"**

Nothing in the intrinsic record or in MOV-ology's Response informs "with reasonable certainty, those skilled in the art about the scope of the invention" as it relates to the negative "payment gateway" and "product feed" limitations. *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1377, 1382-84 (Fed. Cir. 2015). MOV-ology's Response nevertheless argues that these terms are not indefinite for three reasons, each of which is addressed below.

A.      **The scope of these terms is not inferable from the specification**

In its Response, MOV-ology concedes that neither term is expressly defined. Resp. at 4-5. Indeed, MOV-ology agrees that the specification fails to provide examples of electronic forms that lack a "payment gateway" or of data being obtained from electronic forms "without a product feed." *Id*. And MOV-ology declines to provide an example or a working definition of either term such that a defendant could reasonably infer when they are practicing the claim limitations. Despite these omissions, MOV-ology argues that it would have been obvious to "POSITAs and those working in ecommerce technologies in the early-to-mid 2010s, like Messrs. Ling and Norton [the named inventors]" when "forms fall within an embodiment without a payment gateway or product feed." Resp. at 5.

In other words, MOV-ology's contention is that the satisfaction of these limitations is a "you know it when you see it"" situation, which is a hallmark of an indefinite claim. *See, e.g.*, *Inguran, LLC v. ABS Glob., Inc.,* No. 17-CV-446-WMC, 2019 WL 943515, at *8 (W.D. Wis. Feb. 26, 2019) ("While a 'you'll know it when you see it approach' may work in other areas of law, this approach is incompatible with the requirement that a patent claim informs 'with reasonable certainty' those skilled in the art about the scope of the invention.") (citing *Nautilus, Inc. v. Biosig Instruments*, *Inc*., 572 U.S. 898, 901 (2014)). MOV-ology's argument illustrates the problem with this approach. In its view, the determination simply "depends on whether instances of those forms

1

*relate* to making a payment or obtaining product information." Resp. at 5 (emphasis added). But what does it mean for an electronic form to "relate" to making a payment or obtaining product information? The claims do not use the word relate, they recite (1) an electronic form that does not *include* a payment gateway and (2) *obtaining data without* a product feed. MOV-ology's ambiguous reframing collapses these distinct limitations together, rendering their differences superfluous in violation of the principle of claim differentiation, which "creates a presumption that each claim in a patent has a different scope." *CellCast Techs., LLC v. United States*, 150 Fed. Cl. 353, 370 (2020) (internal citations omitted); *see also* Lavian Supp. Decl. ¶¶ 11-14.

**B.    MOV-ology provides no intrinsic evidence of these terms' meaning**

MOV-ology's Response next argues that "intrinsic evidence" supplies the missing meaning for the "payment gateway" term, while conceding that no such evidence exists for the "product feed" term.[1] *See* Resp. at 5-8. MOV-ology's argument, however, is flawed.

None of the references MOV-ology cites constitutes "intrinsic evidence," which courts generally consider to include the claims, specification, and prosecution history of the patent at issue. *See, e.g., Phillips v. AWH Corp.,* 415 F.3d 1303, 1317 (Fed. Cir. 2005). MOV-ology instead takes a circuitous "Six Degrees of Kevin Bacon" approach to eventually identify two patents that predate the Asserted Patents by decades.[2] To illustrate, MOV-ology's first example is to U.S. 5,983,208 ("Haller"). Resp. at 6-7 citing Ex. C. But Haller was not incorporated by reference into the Asserted Patents or cited during prosecution.

---

[1] This portion of MOV-ology's argument applies exclusively to the "payment gateway" term. MOV-ology provides no argument or evidence that the intrinsic record provides any clarity for the "product feed" term.

[2] "Six Degrees of Kevin Bacon is a parlor game in where players challenge each other to arbitrarily choose an actor and then connect them to another actor via a film that both actors have appeared in together[.]" *See* https://en.wikipedia.org/wiki/Six_Degrees_of_ Kevin_Bacon (last visited August 25, 2022).



MOV-ology also relies on U.S. Pat. 5,671,279 ("Elgamal"). *Id.* citing Ex. E. Like Haller, Elgamal was not cited during prosecution of the Asserted Patents, as illustrated below.



Haller and Elgamal are thus, at best, extrinsic "prior art proffered by [MOV-ology] . . . to demonstrate how a disputed term is used by those skilled in the art," which the Court may rely on at its discretion. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1584 (Fed. Cir. 1996).

However, the probative value of the Haller and Elgamal extrinsic prior art evidence is minimal because they fail to establish how the disputed term "payment gateway" was used by those skilled in the art. *See id.* Haller and Elgamal predate the Asserted Patents by at least 15 years.[3] This significant lapse in time is important because the Internet was a nascent technology in 1995-96. Prior art from 15 to 20 years earlier bears little relationship to how "those working in ecommerce technologies in the early-to-mid 2010s" or "those working in this space at the time"—as MOV-ology's Response argues—would come to view these concepts. Resp. at 5, 9; *see also Plastpro, Inc. v. Therma-Tru Corp.,* 378 F. Supp. 2d 519, 529 (D.N.J. 2005) (emphasizing contemporaneous objective resources) citing *Vitronics,* 90 F.3d at 1585. Indeed, both Haller's "payment gateway computer system 140" and Elgamal's "Acquirer (Gateway) Application 20" were distinct methods for facilitating payments operating at their respective points of novelty. As

---

[3] Haller was filed on June 17, 1996 and Elgamal on November 13, 1995. Resp. at Ex. C, E. The '282 and '358 Patents were filed on June 18, 2014 and July 9, 2018, respectively. *See* Dkt. Nos. 42-1, 42-2.

such, neither of Haller Elgamal's disclosures regarding external payment systems and applications provide any clarity to a POSITA sufficient to understand what it means for an electronic form to not include a payment gateway.

### C.    There is no evidence that these terms have meaning to a POSITA

MOV-ology also asks the Court to "disregard" Dr. Lavian's—Defendants' expert witness—testimony because he ostensibly lacks "relevant experience," while at the same time requesting that "[the inventor's] actual experience and testimony" be credited. Resp. at 10. Dr. Lavian is, if anything, overqualified to render an opinion as a POSITA. *See* Lavian Supp. Decl. ¶¶ 3-9.

It is MOV-ology's conclusory inventor declaration, in contrast, that should be afforded no weight. It is well-established that inventor testimony has inherently little probative value in the claim construction context. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 983 (Fed. Cir. 1995) ("[T]he testimony of Markman and his patent attorney on the proper construction of the claims is entitled to no deference. For example, they both testified as to how the patent should be construed based on the text of the patent. This testimony about construction, however, amounts to no more than legal opinion . . ."). The Court must bear in mind that "the testimony of an inventor . . . concerning claim construction . . . often is a self-serving, after-the-fact attempt to state what should have been part of his or her patent application." *Bell & Howell Document Management Prod. Co. v. Altek Sys*., 132 F.3d 701, 706 (Fed. Cir. 1997). "It is particularly inappropriate to consider inventor testimony obtained in the context of litigation in assessing validity under 35 U.S.C. section 112, paragraph 2, in view of the absence of probative value of such testimony." *Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000). Such is the case here. The Asserted Patents are completely silent as to the meaning and scope of these terms, they are found nowhere in the intrinsic record, and MOV-ology has produced no extrinsic evidence of their

supposed ubiquity, instead resorting to "self-serving" inventor testimony to fill the gaps. *See Bell & Howell*, 132 F.3d at 706.

## II.     TERM NO 3: "incomplete"

"Incomplete" is used synonymously with "abandoned" in the '358 Patent. Rather than address the issues raised by Defendants, MOV-ology largely ignores or brushes aside many of the arguments raised in Defendants' Opening Brief.

First, MOV-ology describes its own synonymous use of the terms "incomplete" and "abandoned" in this litigation as a "***single*** copy/paste error in MOV-ology's 100+ pages of preliminary infringement contention claim charts," which it then characterizes as a "gotcha" argument. Resp. at 10 n.2 (emphasis added). But rather than merely a single error, it is ubiquitous. MOV-ology used the term "abandonment" in place of the claims' recitation of "incomplete" across numerous claims of the '358 Patent, including claims 2, 3, 4, and 18. *See generally* Dkt. 42-3. Additionally, for other claims that recite "incomplete" electronic forms, such as claims 1 and 17 of the '358 Patent, MOV-ology contends that BigCommerce "offers its customers an 'abandonment report.'" *See, e.g.*, *id.* at 4. MOV-ology's repeated usage of "abandoned" in place of "incomplete" can hardly be chalked up to a "***single*** copy/paste error."

Next, MOV-ology directs the Court to one of the few disclosures of "incomplete" in the specification. *See* '358 Patent at 5:58-60. As explained in Defendants' Opening Brief, however, this disclosure, in view of the entirety of the specification, confirms that the '358 Patent treats these terms synonymously. *See* Op. Br. at 6. MOV-ology wholly ignores, and probably for good reason, that the specification uses "incomplete" only three times, while using "abandoned" over 60 times. If "incomplete" is not synonymous with "abandoned," as MOV-ology contends, the claims lack written description and enablement under Section 112. *See Liebel-Flarsheim Co. V.*

*Medrad, Inc.*, 358 F.3d 898, 911 (Fed. Cir. 2004) ("This court has frequently alluded to the 'familiar axiom that claims should be so construed, if possible, as to sustain their validity.'" (quoting *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999))). Moreover, MOV-ology ignores Dr. Lavian's testimony that a "POSITA would understand 'incomplete,' as recited in the '358 Patent, to be synonymous with 'abandoned.'" Lavian Decl. at ¶ 54.

Additionally, MOV-ology argues that an incomplete form can be a form that is not abandoned whereas an abandoned form can be a form that is completed. *See* Resp. at 11. Apart from the fact that this argument finds no support in the specification, as demonstrated above, it further exemplifies why a construction for this term is necessary apart from MOV-ology's "plain and ordinary" proposal. MOV-ology cites no support from the specification to describe at what point an electronic form may be considered incomplete as opposed to complete. Or any disclosure describing how an abandoned form could also be completed, or vice versa. Indeed, because the '358 Patent uses these terms synonymously, no such disclosure need exist. The Court need look no further than a comparison of Claim 2 of the '282 Patent with Claim 2 of the '358 Patent, where both claims are nearly identical but for the replacement of "abandoned" with "incomplete" and "determination" with "assessment." This is hallmark synonymity.

Lastly, MOV-ology mischaracterizes the synonymity of both terms exemplified by Claim 19. According to MOV-ology, "BigCommerce's proposed construction would improperly read any narrowing or further subject matter out of dependent Claim 19 and render Claim 19 superfluous." Resp. at 11-12. Not so. Claim 19 does not add that the form in Claim 17 has now been abandoned. Instead, all Claim 19 adds is a determination step to *determine* at what point the incomplete (read: abandoned) form of Claim 17 was indeed abandoned. Rather than render Claim 19 superfluous, Defendants' proposed construction is necessitated by the claim language.

III.     **TERM NOS. 4-5: "computer hardware configured to . . . "**

MOV-ology agrees that claim 9 recites "computer hardware configured to" perform functions claimed at the point of novelty: *i.e.*, determining whether an electronic form has been abandoned (Term No. 4) and obtaining data from that abandoned form (Term No. 5). *See, e.g.,* Resp. at 14. Still, MOV-ology counters that these terms connote sufficiently definite structure to a POSITA. *See* Resp. at 13-14. In the alternative, MOV-ology contends, if these terms are instead interpreted to refer to a "data scraping script comprising embedded in a web page executing on one or more computer processors," then these claims as rewritten are not indefinite because various algorithms are disclosed. *Id.* at 14-19. Both contentions are addressed below.

A.     **Term Nos. 4 and 5 are subject to § 112 ¶ 6**

MOV-ology disagrees that § 112, ¶ 6 applies. *See generally* Resp., 16-18. It points to the generic computing hardware disclosed in the figures and specification—functional depictions of "computers, databases, and websites that existed at the time of the invention"—and reasons that "this sort of computer hardware is configured through software to carry out the novel functions disclosed and claimed by the '282 patent." *Id*. at 17; *see also id.* at 18 ("a skilled artisan could straightforwardly convert into software code to run on the hardware discussed above."). In effect, MOV-ology argues that because the Asserted Patents provide sufficient enabling algorithmic disclosure, and because POSITA would understand that these algorithms are to be carried out on computer hardware, then § 112, ¶ 6 does not apply. But that puts the cart before the horse.

Claiming "computer hardware configured to" perform one or more recited functions at the claimed point of novelty does not circumvent the means-plus-function analysis simply because computer hardware ***could*** refer to known components. Indeed, it would be hard to devise a more generic and non-specific way of describing what MOV-ology concedes is really software programmed to perform specific functions. As the USPTO noted in rejecting the '358 Patent's

similar terminology during prosecution, the computer hardware configured to "limitation(s) uses a generic placeholder that is coupled with functional language without reciting sufficient structure to perform the recited function and the generic placeholder is not preceded by a structural modifier." Dkt. No. 42-4. Accordingly, claims, like these, that lack the word 'means' "are nevertheless subject to § 112 ¶ 6 when the limitation in question has no commonly understood meaning and is not generally viewed by one skilled in the art to connote a *particular* structure." *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1366 (Fed. Cir. 2022) (emphasis added) citing *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1372 (Fed. Cir. 2015). Ultimately, MOV-ology has produced no evidence rebutting Dr. Lavian's contention that the mere invocation of "computer hardware configured to" in and of itself connotes particular structure to avoid application of § 112, ¶ 6. *See* Lavian Decl. at ¶¶ 56-64.

## B. The specification fails to disclose algorithms sufficient to connote structure

MOV-ology next argues that even if § 112, ¶ 6 were to apply, the specification contains disclosures sufficient to avoid a determination of indefiniteness. *See generally* Resp. at 16-19. The disclosures MOV-ology rely on, however, fall short.

### 1. Term No. 4: determining form abandonment

Nothing in the Asserted Patents describes how to configure computer hardware so as to "determine that an electronic form accessed by a user has been abandoned by the user" as recited in Term No. 4. MOV-ology's Response addresses it only once in passing:

> The specification presents similar disclosures for the determination of abandonment. For instance, the '282 patent discloses using "Node.JS [to] determine whether the visitor 320 is still accessing the website 334 or has left the website 334." ['282 Patent] at 12:19-23.

Resp. at 17. This is misleading. As the Asserted Patents explain, Node.JS is simply a "software platform" upon which code is implemented. *See* '282 Patent at 9:19-23. It is not itself an algorithm

and does nothing to "teach a skilled artisan how 'computer hardware' can be "configured to" perform the claimed functions through software across many hardware and software environments, including general- or special-purpose computers." *Id.*; Lavian Supp. Decl. at ¶¶ 16-18. At best, it suggests a tool to a POSITA—the Node.JS JavaScripting environment—in which to execute the claimed function, but nothing more. *Id.* at ¶ 18.

### 2. Term No. 5: obtaining data from abandoned forms

Similarly, nothing in the Asserted Patents describes how to configure computer hardware so as to "obtain data from the abandoned electronic form" by building a data structure and parsing that data structure to obtain the HTML element as recited in Term No. 5. MOV-ology first points to the disclosures at 8:30-34. Resp. at 16. But this generic description is merely "purely functional language, which restates the function associated with the means-plus-function limitation [and] is insufficient to provide the required corresponding structure." *Noah Sys. Inc. v. Intuit Inc.*, 675 F.3d 1302, 1317 (Fed. Cir. 2012) (citations omitted).

MOV-ology then points to the disclosures that immediately follow at 8:35-10:10 as examples of such "scripting functions." Resp. at 16-17. But again, none of these inform a POSITA as to how to perform the claimed functions of building a data structure and parsing that data structure to obtain the HTML element. *See* Lavian Supp. Decl. at ¶¶ 19-28. They are simply a recitation of possible computing and/or software environments in which the claimed function could be carried out. *Id.*

MOV-ology next appeals to Figure 9 and its corresponding disclosure, claiming that it "supplies exemplary object code for such a script," where the "script" referenced by MOV-ology is presumably the script for obtaining data from abandoned electronic forms. Resp. at 17. But that is a mischaracterization of Figure 9, which even the Asserted Patents acknowledge does not purport to show how data is obtained from abandoned forms. *See* '282 Patent at 16:7-10 ("At line

906, the document.location-protocol obtains the protocol of the current webpage and line 908 writes the script tag on the webpage. The script tag places or loads the JavaScript file on the webpage."). In other words, Figure 9 provides code that: (1) obtains a webpage protocol (*i.e.*, whether the page protocol is "http://" or "https://"), and (2) inserts a separate but unspecified JavaScript file onto a webpage. *see also* Lavian Supp. Decl. at ¶ 29. In short, Figure 9 provides no disclosure relating to how data is obtained from abandoned electronic forms. *Id.*

## IV.    TERM NO. 6: "wherein obtaining . . ."

According to MOV-ology, the antecedent basis for Claim 20's "obtaining the at least one HTML element from the incomplete electronic form" can be found in Claim 17's "obtaining a protocol of at least one webpage." This argument fails in view of the remainder of the '358 Patent, specifically Claim 9. As discussed in the Opening Brief, which MOV-ology ignores in its Responsive Brief, Claim 9 recites both a step of "obtaining a protocol of at least one webpage" and a subsequent step of "obtain[ing] the at least one HTML element." Claim 9 demonstrates that "obtaining a protocol" is a step ***distinct*** from "obtain[ing] the . . . HTML element." They are not one in the same, as MOV-ology contends.

Additionally, MOV-ology's position is inherently contradictory. Specifically, MOV-ology concedes that the step of "locating" the HTML element is a predicate step that must occur before "obtaining" the HTML element. *See* Resp. at 19. However, MOV-ology's purported antecedent basis—"obtaining a protocol of … one webpage"—occurs in Claim 17 ***before*** the HTML element is located. An HTML element surely cannot be "obtained" before it is "located." Such a result is nonsensical. Accordingly, "obtaining a protocol," as recited in Claim 17 cannot provide the necessary antecedent basis for Claim 20's "obtaining the . . . HTML element" limitation. Without this antecedent basis, Claim 20 is indefinite. *See* Op. Br. at 14-15; *see also* Lavian Decl. at ¶ 70.

Dated: August 25, 2022                              FISH & RICHARDSON P.C.


By:  */s/  Michael R. Ellis*
    Neil J. McNabnay
    njm@fr.com
    Texas Bar No. 24002583
    Lance Wyatt
    wyatt@fr.com
    Texas Bar No. 24093397
    Michael R. Ellis
    ellis@fr.com
    Texas Bar No. 24102726
    Ashu Balimba
    balimba@fr.com
    Texas Bar No. 24099369
    FISH & RICHARDSON
    1717 Main Street, Suite 5000
    Dallas, TX 75201
    (214) 747-5070 (Telephone)
    (214) 747-2091 (Facsimile)

    ***Attorneys for Defendants***
    ***BigCommerce Holdings, Inc.,***
    ***BigCommerce Pty. Ltd., and***
    ***BigCommerce, Inc.***

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on August 25, 2022, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Civil Rule 6.1.

*/s/ Michael R. Ellis*
Michael R. Ellis