## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| MOV-ology LLC, | Civil Action No. 6:22-cv-00084-ADA |
| Plaintiff, | |
| v. | |
| BigCommerce Holdings, Inc., BigCommerce Pty. Ltd., and BigCommerce, Inc., | **Jury Trial Demanded** |
| Defendants. | |

**MOV-ology's Sur-Reply Claim Construction Brief**

## Table of Contents

Table of Authorities ................................................................................................................ ii

1.  Introduction ................................................................................................................ 1

2.  "Product Feed" and "Payment Gateway" ................................................................ 1

3.  "Incomplete" .............................................................................................................. 5

4.  "Computer Hardware Configured to . . ." ................................................................ 6

5.  "Wherein Obtaining the At Least One HTML Element . . . ." ................................ 9

6.  Conclusion ............................................................................................................... 10

## Table of Authorities

**Cases**

*Bancorp Servs. L.L.C. v. Hartford Life Ins. Co.*,
    359 F.3d 1367 (Fed. Cir. 2004)................................................................................. 3

*Budde v. Harley-Davidson, Inc.*,
    250 F.3d 1369 (Fed. Cir. 2001)................................................................................. 8

*Ex parte Gross*,
    Appeal 2011-004811 (P.T.A.B. Nov. 30, 2006) ....................................................... 6

*Finisar Corp. v. DirecTV Grp., Inc.*,
    523 F.3d 1323 (Fed. Cir. 2008)................................................................................. 9

*Intel Corp. v. VIA Techs., Inc.*,
    319 F.3d 1357 (Fed. Cir. 2003)................................................................................. 8

**Other Authorities**

*DOM tree*, Modern JavaScript Tutorial, https://javascript.info/dom-nodes ................................. 8

1.      **Introduction**

BigCommerce's reply brief more repeats its opening arguments than advances the debate over the disputed claim terms. These terms all have and deserve construction in accordance with their plain and ordinary meaning. The evidence does not show any are indefinite or synonymous.

2.      **"Product Feed" and "Payment Gateway"**

The dispute over these terms centers on whether they mean what they say or whether they signify some obscure early 2010s technical jargon that means nothing without a period glossary. MOV-ology believes these terms need no construction or should receive a construction according to their plain and ordinary meaning. BigCommerce asserts that these terms would prove so confusing to a POSITA that the Court must find them indefinite.

No one would find this argument more surprising than BigCommerce. For example, BigCommerce understands "payment gateway" today the same way those skilled in the art have understood its meaning for decades. BigCommerce's "Help Center" illustrates (highlight added):



Ex. G at 1. Since at least 2015, BigCommerce's website has featured discussions about payment gateways that echo the patents cited in MOV-ology's response brief and the unrebutted testimony of Mr. Norton that BigCommerce asks the Court to unceremoniously disregard:



Ex. H at 1, 6 (showing a Wayback Machine archive of this page in March 2015).



Ex. I at 1-4, 6 (showing a Wayback Machine archive of this page in December 2017).

BigCommerce's reply brief begins with the claim that "MOV-ology agrees that the specification fails to provide examples of electronic forms that lack a 'payment gateway' or of data being obtained from electronic forms 'without a product feed.'" ECF No. 49 at 1. MOV-ology in fact quoted where the specification identifies examples of these forms:

> The electronic form or eForm **336** comprises a computer program version of a paper form that is accessible from webpages, mobile devices, portals, software applications, and the like. In an embodiment, the eForm **336** does not have a payment gateway and permits online entry of data. In another embodiment, the eForm **336** is any electronic form that does not have a payment gateway. Examples of electronic or computer-generated forms **336** are registration forms, survey forms, marketing research forms, application forms, questionnaires, and the like.

*E.g.*, ECF No. 42-1 at 6:50-59 (emphasis added). In this example, registration forms, survey forms, marketing research forms, application forms, questionnaires, and the like do not have a payment gateway if they do not collect information to process a payment. These forms similarly do not contain a product feed if they do not display products offered by that website operator.

BigCommerce calls this a "know it when you see it" situation and cites an out-of-district case using the same idiom in another context. ECF No. 49 at 1. Rhetorical flourish aside, this jab adds nothing to the argument. MOV-ology's response brief provides ample unrebutted evidence that both "payment gateway" and "product feed" existed in the zeitgeist to a layperson and a POSITA alike well before, during, and since the invention of the asserted patents. To anyone remotely familiar with ecommerce technology at the relevant time, "payment gateway" and "product feed" needed no explicit definition. *See, e.g.*, *Bancorp Servs. L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004) (asking, "even in the absence of any express definitions," whether the term's meaning "is reasonably clear").

MOV-ology's response brief identified multiple prior art patents in the chain of citations from those cited during prosecution that illustrate the ubiquity of these terms to those in the art. *See* ECF No. 47 at 5-8. BigCommerce's reply nitpicks whether these references technically qualify as intrinsic evidence and laments that they "fail to establish how the disputed term 'payment gateway' was used by those skilled in the art." ECF No. 49 at 3. Not so. The Haller reference, for example, defines "payment gateway" as "a system that provides electronic commerce services in support of a bank or other financial institution, and that interfaces to the financial institution to support the authorization and capture of transactions." ECF No. 47 at 6 (quoting ECF No. 47-3 at 13:18-22). Both asserted patents detail different ways to implement this core concept. *See id.* at 6-7. BigCommerce objects that "[p]rior art from 15 to 20 years

earlier bears little relationship to how 'those working in ecommerce technologies in the early-to-mid 2010s' or 'those working in this space at that time'—as MOV-ology's Response argues—would come to view these concepts." ECF No. 49 at 3 (quoting ECF No. 47 at 5, 9).

Last, BigCommerce attempts to defend the expert declaration of Dr. Lavian and impugn the declaration of a named inventor, Mr. Norton. MOV-ology's response brief points out that Dr. Lavian had no experience befitting a POSITA, as he had not worked in digital marketing or any ecommerce technology, and thus may not know the commonly understood meaning of claim terms simply for lack of relevant experience or study. *See* ECF No. 47 at 8-9. BigCommerce's reply brief volunteers a supplemental expert declaration of Dr. Lavian that sprinkles his CV with buzzwords more germane to the asserted patents.[1] BigCommerce protests that "Dr. Lavian is, if anything overqualified to render an opinion as a POSITA." ECF No. 49 at 4. Over-credentialed, maybe. But not overqualified. Dr. Lavian's career has focused on mobile devices and network communications. These technologies bear little relevance to digital marketing and ecommerce. Dr. Lavian simply did not run in the circles frequented by skilled artisans at the time of these inventions. His opinions on what a POSITA would have known should carry little weight.

The evidence presented in Mr. Norton's declaration goes substantively unrebutted in BigCommerce's reply brief. BigCommerce asks the Court to disregard Mr. Norton's testimony based on caselaw casting doubt on inventors' ability to construe claims in their patent. ECF No. 49 at 4-5. Fortunately, Mr. Norton's testimony does not attempt to construe claims. Instead, his declaration relates exclusively to providing examples of how he and others in his orbit at MOV-

---

[1] MOV-ology's response brief offers no expert testimony for Dr. Lavian to rebut. And Dr. Lavian's supplemental declaration ignores altogether Mr. Norton's testimony about the "product feed" and "payment gateway" terms. *See* ECF No. 49-1, ¶¶ 10-14. Dr. Lavian instead volunteers supplemental opinions about several other terms where MOV-ology's response brief cited no declarant—even the proposed means-plus-function terms. *See id.*, ¶¶ 15-29. The Court should give no weight to these rebuttal opinions styled as a "supplemental" declaration.

ology and before he co-founded MOV-ology understood "payment gateways" and "product feeds" in the context of digital marketing and ecommerce technologies. *See* ECF No. 47 at 9; ECF No. 47-1, ¶¶ 7-10. To illustrate, Mr. Norton offered that he often developed product feeds as a consultant to ecommerce businesses in the late 2000s and early 2010s. ECF No. 47-1, ¶ 8. As a co-founder of MOV-ology, Mr. Norton noted that he and co-inventor Tom Ling discussed payment gateways and product feeds with at least one potential customer at the renowned Consumer Electronics Show in Las Vegas in 2012. *See id.*, ¶ 9. And within MOV-ology the staff and developers regularly used these terms without confusion or ambiguity. *See id.*, ¶ 10. Neither BigCommerce nor Dr. Lavian offer any contrary evidence or testimony showing that these terms were not common knowledge to skilled artisans at the time of the invention.

The Court should thus not find indefinite or construe "product feed" and "payment gateway" or, if it does construe them, afford these terms their plain and ordinary meaning.

**3.      "Incomplete"**

BigCommerce maintains that "incomplete" and "abandoned" mean the same thing. But they do not. MOV-ology uses the terms differently in the patents and uses the terms together in the same claim. BigCommerce merely repeats its opening arguments, conceding that these arguments are more like an enablement challenge than a claim construction proposal. *Compare* ECF No. 47 at 4, n.1 ("This assertion confuses claim construction with an enablement challenge, and in any case does not bear on whether these terms have a plain and ordinary meaning"), *with* ECF No. 49 at 5-6 ("If 'incomplete' is not synonymous with 'abandoned,' as MOV-ology contends, the claims lack written description and enablement under Section 112").

BigCommerce ignores and thus concedes a dispositive point in MOV-ology's response brief: the specification's description of an embodiment in which "the identification and

marketing service 212 scrapes the data 214 from the incomplete and/or abandoned eForms 206"

confirms the terms have different meanings if for no other reason than the "and/or" language

means "element A alone, element B alone, or elements A and B taken together." ECF No. 47 at

10 (quoting ECF No. 42-2 at 5:58-60; *Ex parte Gross*, Appeal 2011-004811, Decision on Appeal

at 4 (P.T.A.B. Nov. 30, 2006)). These claims of the '358 patent thus capture a different

embodiment than MOV-ology's other claims that use "abandoned." And dependent claim 19,

read properly, discloses an embodiment in which both conditions—incompleteness and

abandonment—exist. Any other reading fails to give life to both terms.

　　　BigCommerce harps on the fact that MOV-ology's infringement contentions accuse the

same set of features under both "incomplete" and "abandoned" claims. But this aligns with

MOV-ology's plain language interpretation that electronic forms can be incomplete (not fully

filled out), abandoned (unsubmitted), neither (fully filled out and submitted), or both (not fully

filled out and unsubmitted). Without the benefit of discovery, it appears from MOV-ology's

examination of publicly available evidence that the accused BigCommerce products appear to

satisfy both sets of claims. BigCommerce thus offers no reason to discard a term in the '358

patent reflecting another embodiment and render it synonymous with another term. Both

"incomplete" and "abandoned" should have the benefit of their plain and ordinary meaning.

**4.　　"Computer Hardware Configured to . . ."**

　　　BigCommerce uses unwarranted pejorative language to cast MOV-ology's arguments as

"misleading" and wrongly accuses MOV-ology of a "mischaracterization of Figure 9." ECF No.

49 at 13, 14. On the contrary, MOV-ology's position that the "computer hardware configured to"

terms are not indefinite takes an uncomplicated reflection of the '282 patent's disclosure.

The specification of the '282 patent offers ample information about these terms for a skilled artisan to understand the invention at each of the relevant levels of system design: (1) hardware, (2) software environment, and (3) functional code. First, MOV-ology points to the specific disclosures of hardware able to run the invention and of sufficient specificity that the presumption against the applicability of § 112(f) cannot be overcome. ECF No. 47 at 17-18 (citing and quoting ECF No. 42-1 at 7:11-25[2] and 7:26-29). Second, MOV-ology shows that, for both terms, the '282 patent discloses software environments that could operate on the disclosed hardware, including JavaScript generally (in Figure 9) and the Node.JS software platform specifically. *Id.* at 21 (citing ECF No. 42-1 at Fig. 9, 12:19-23). Third, MOV-ology points out that "the '282 patent details myriad functional components with supporting diagrams and prose explanation that a skilled artisan could straightforwardly convert into software code to run on the hardware discussed above." *Id*. at 18 (citing ECF No. 42-1 at Fig. 4, Fig. 7, Fig. 8, 8:18-9:25). MOV-ology also noted Examples 1 and 2 as "programming code for carrying out particular functions." *Id*. (citing ECF No. 42-1 at Fig. 9, 9:26-10:12).

MOV-ology acknowledges the interaction between these three levels—*e.g.*, that the computer hardware limits possible software environments, and that the software environment will determine the form of object code (and vice versa in each case). ECF No. 47 at 18, 21. But MOV-ology also notes that such considerations are well within the ken of a skilled artisan with the disclosure in hand—*i.e.*, "[e]ach of these disclosures teaches a skilled artisan how 'computer hardware' can be 'configured to' perform the claimed functions through software across many hardware and software environments." *Id.* at 21. The '282 patent provides the technological framework for making the disclosed ideas work, as well as the ideas themselves. The patent does

---

[2] MOV-ology's response brief inadvertently cited the quoted portions as present in Column 3, rather than Column 7, of the '282 patent, due to a typographical error.

not also need to teach the skilled artisan how to code, as BigCommerce and its expert suggest. *See, e.g.*, *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1365-66 (Fed. Cir. 2003) ("Whether the specification adequately sets forth structure corresponding to the claimed functions must be considered from the perspective of one skilled in the art." (citing *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376 (Fed. Cir. 2001)).

BigCommerce's reply essentially attacks only the second layer of the technology, arguing that because the disclosed software environments alone cannot perform the functions, then there is insufficient disclosure. To illustrate, BigCommerce argues that both Node.JS and the code of Figure 9 do not themselves determine abandonment or obtain information. ECF No. 49 at 13-15. Fine, but this observation proves nothing. MOV-ology's response already explained that the '282 patent *also* provides flow charts explaining the processes to be carried out by the functional code, a prose explanation of how the software environments support those processes and—as Example 1 and Example 2 show—code suitable for use in those software environments. *See* ECF No. 42-1 at Fig. 7, Fig. 8, 8:18 to 10:12. The patent discloses not only the code of Figure 9 for the disclosed JavaScript software environment, but also functional code like Example 1 that the code of Figure 9 could insert, and explanation of the processes such code caries out. ECF No. 47 at 18.

Even Dr. Lavian acknowledges that Examples 1 and 2 include code that can "scan through HTML tags to obtain the web page links" and "prints the DOM tree" for a webpage— *i.e.*, obtain a hierarchy of HTML tags. ECF No. 49-1, ¶¶ 27, 28; *see also DOM tree*, Modern JavaScript Tutorial, https://javascript.info/dom-nodes ("The DOM represents HTML as a tree structure of tags."). This is the very functional code a skilled artisan can use to "obtain[] data" as claimed—scrape a website to obtain a subset its data. Ultimately, the error in BigCommerce's reply is the same as the error in its opening brief: BigCommerce looks for an extremely specific

sort of disclosure that is not required, the complete code solution, and finding such unneeded element wanting, protests. *See* ECF No. 47 at 22. BigCommerce ignores the sufficient disclosure, which is flexible to various hardware environments present "in prose, or as a flow chart, or in any other manner that provides sufficient structure" like exemplary code. *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1340 (Fed. Cir. 2008) (internal citation omitted).

The "computer hardware configured to" terms are thus not subject to § 112, ¶ 6. If the Court finds otherwise, the specification supplies sufficient structure to render the terms not indefinite. What's more, BigCommerce's reply ignores altogether MOV-ology's observation that if the Court finds these terms subject to § 112, ¶ 6 it can simply construe them by substituting the "computer hardware" language for the "data scraping script" language accepted by the Examiner during prosecution of the '358 patent. *See* ECF No. 47 at 14, 15.

**5.      "Wherein Obtaining the At Least One HTML Element . . . ."**

BigCommerce's reply confuses the dispute over this term more than it clarifies. MOV-ology's response brief identified the antecedent basis for claim 20 of the '358 patent in claim 17:

| Claim 20 Disputed Term | Claim 17 Antecedent Basis |
|---|---|
| wherein obtaining the at least one HTML element from the incomplete electronic form | <u>obtaining a protocol</u> of at least one webpage associated with the incomplete electronic form; writing a script tag associated with a <u>script file</u> to the at least one webpage <u>according to the protocol</u>, the script tag configured to place the script file onto the at least one webpage, the <u>script file</u> <u>configured to locate</u> the at least one <u>HTML element</u>; |

ECF No. 47 at 19. BigCommerce says that "obtain[ing] the at least one HTML element" and "obtaining a protocol . . . are not one [and] the same, as MOV-ology contends." ECF No. 49 at 10. But MOV-ology made no such contention. "Obtaining a protocol" can provide the antecedent basis for "obtaining the at least one HTML element" even if these are distinct steps.

Claim 20 teaches that software can "obtain[] a protocol of at least one webpage associated with the incomplete electronic form" and then, within that page, "obtain[] the at least one HTML element from the incomplete electronic form." There is no contradiction here, inherent or otherwise. The claimed software obtains a protocol for the full page, and then locates an element according to that protocol within a particular form.

Claim 20 thus has antecedent basis and is not indefinite.

## 6.    Conclusion

MOV-ology asks the Court to not construe the disputed claim terms or to do so according to their plain and ordinary meaning.

Respectfully submitted,

Dated: September 8, 2022

By: */s/ Patrick A. Fitch*
     Karl Rupp
     State Bar No. 24035243
       krupp@soreylaw.com
     **Sorey & Hoover LLP**
     100 North Sixth Street, Suite 502
     Waco, Texas 76701
     Telephone: 903-230-5600

     Robert R. Brunelli (admitted *pro hac vice*)
       rbrunelli@sheridanross.com
     Matthew C. Holohan (admitted *pro hac vice*)
       mholohan@sheridanross.com
     Patrick A. Fitch (admitted *pro hac vice*)
       pfitch@sheridanross.com
     Alex W. Ruge (admitted *pro hac vice*)
       aruge@sheridanross.com
     **Sheridan Ross P.C.**
     1560 Broadway, Suite 1200
     Denver, Colorado 80202
     Telephone: 303-863-9700
     Facsimile:  303-863-0223
     litigation@sheridanross.com

     *Attorneys for MOV-ology LLC*

—10—

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 8, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record in the above-referenced matter.

/s/ Thomas J. Armento
Thomas J. Armento
Paralegal
tarmento@sheridanross.com
**Sheridan Ross P.C.**
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone:  303-863-9700
Facsimile:   303-863-0223
litigation@sheridanross.com
